### ELLISON v. WEATHERS, *Appellant.*

1. **Arbitration.** If an award is broader than the submission, and either constitutes one entirety or its several parts are so connected as to be conditional and dependent upon one another, it will be void; but if one part is complete in itself, and is separable from and independent of the rest, and that part is covered by the submission, it will be upheld, while the rest will be rejected; but even the part not within the submission will become binding if accepted by the parties.

2. ——: RATIFICATION. No new consideration is necessary to uphold a subsequent ratification of an unauthorized award.

3. ——: WITNESS. An arbitrator is not a competent witness to impeach his own award.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

*J. Morris Young* and *Phelps & Brown* for appellant.

*A. L. Thomas* for respondent.

RAY, J.—This case originated before a justice of the peace in Jasper county, where the plaintiff had judgment, from which the defendant appealed to the circuit court, where plaintiff again had judgment, from which the defendant appealed to this court. The statement filed before the justice was to the effect following:

"Plaintiff states that on the — day of November, 1878, he was the owner of one white heifer, of the value of $25, which defendant wrongfully took from plaintiff and converted to his own use, to the damage of plaintiff in the sum of $40. Plaintiff further says that on the — day of November, 1878, he and defendant, by agreement, selected three arbitrators, (Buchanan, Potts and Ellis,) to hear and determine said controversy; that they submitted the same to said arbitrators, each party agreeing to abide the decision, and perform whatever should be adjudged and determined by said arbitrators; that said arbitrators, after hearing the evidence produced by the respective parties, made and published their award, in the presence and hearing of the parties, to the effect following: 'That if the defendant retained the heifer, he should pay the plaintiff the sum of $15 for said heifer, and all the witness fees and mileage, and pay plaintiff for his own fees as a witness.' Plaintiff says that the defendant thereupon agreed to pay plaintiff said sum of $15, and the further sum of $15 witness fees, there being seven witnesses taken by plaintiff, who traveled seventeen miles to place of trial; and that the defendant refuses to pay the same to plaintiff, although the same is due and unpaid. Thereupon he asks judgment against the defendant for the sum of $30, with interest and costs."

Neither party requiring a jury, the case was submitted to the court for trial. The record shows that the agreement to arbitrate, the submission to arbitrators, as well as

the award of the arbitrators, were altogether oral; that Buchanan, Potts and Ellis were all chosen as the arbitrators; that the question submitted to them for decision was the "ownership" of the heifer; that all three of the arbitrators met to hear, consider and determine the question thus submitted; that the plaintiff and defendant, with their witnesses, appeared before said arbitrators and testified about the matter; that it appeared from said testimony that prior to the date of the arbitration the plaintiff had been in the possession of said heifer, but that the defendant had driven her off, and at the time of the arbitration had her in his possession in a lot close by where the arbitration was being held—both parties claiming to be the owner; that, after hearing all the testimony produced by the respective parties, the arbitrators all retired to consider and determine the question, (and also proceeded to said lot to look at the heifer in controversy,) and thereupon made and published their award, in the presence and hearing of the parties, to the effect "that the heifer belonged to the plaintiff;" and further, "that if the defendant elected to retain the heifer, he was to pay the plaintiff $15, as the value of the heifer, and to further pay all the costs of the arbitration, witness fees, etc.; if the defendant returned the heifer to the plaintiff, then he was to pay half the costs and the plaintiff the other half."

What followed this announcement of the award, the record shows was differently stated by the parties and witnesses, and in some particulars was the subject of conflicting and contradictory testimony. On some of the points, however, all the witnesses as well as the parties agree. The plaintiff and witness Buchanan both testify that upon the announcement of the award, the defendant said he would retain the heifer, pay the $15, as the value of the heifer, and the costs. The defendant and witness Chase each deny that defendant said any such thing. Other witnesses testify that they did not hear the defendant say he would pay the award. All the witnesses, however, including both

plaintiff and defendant, agree in testifying that upon the announcement of the award, the defendant said (presumably addressing the witnesses) "Boys, what's your bills;" or, (as one witness expressed it,) "Boys come up here till I see what you are going to charge me." All the witnesses and parties further agree that the defendant thereupon also, asked Esq. Ellis what his fees were, and paid him $2, the amount of his charges. The record further shows that the defendant retained the heifer and made no offer to return her to the plaintiff; that the plaintiff was present during all this time, and expressed no dissent and made no objections to what the defendant said and did; nor did he set up any claim or make any demand for the heifer.

Buchanan testified that he, Potts and Ellis were the three arbitrators, who heard and tried the case as such; that after hearing the testimony, they all adjourned to the lot and looked at the heifer in controversy; that they all agreed that the plaintiff was the owner of the heifer; that Ellis then said we should fix the value of the heifer; I said she was worth $18. Potts thought $13 was enough, when Ellis decided the value to be $15. Ellis also said we must settle about the costs, which we did. We all then returned to the school house where the arbitration was held, and Ellis announced the award as hereinbefore stated.

Ellis testified that he was present at the arbitration, that he acted as umpire only, and not as one of the arbitrators; that he did not understand or consider himself as one of the arbitrators, but solely as umpire, and only called on to act in case the two arbitrators did not agree; that he swore the witnesses and the two arbitrators, Buchanan and Potts, but that he was not sworn; that the award was as stated; that he had nothing to do in making said award, except to decide the value of the heifer, when the two arbitrators differed as to the value; that he did not concur in or approve the award, but at the request of the two arbitrators he announced the award, but made no announcement of his dissent or objection to the same.

Buchanan on being re-called, said he never heard that Ellis did not consider himself as one of the arbitrators. He appeared to be acting as one, and I considered him as one. He never objected to the decision as to who was the owner of the heifer.

At the close of the testimony the court gave the following instructions for the plaintiff, over the objections of the defendant, who excepted:

1. If the court find from the evidence that the plaintiff and defendant authorized Walter Buchanan, H. C. Potts and S. J. Ellis to settle and determine a certain dispute arising between them in relation to a certain heifer, agreeing to abide and perform whatever should be determined by said Buchanan, Potts and Ellis, and that after hearing the statements and evidence of the parties, they decided that if the defendant retained the heifer, he should pay the plaintiff $15 and all costs, and that afterward defendant elected to retain the heifer and agreed to pay said sum and costs, then the finding shall be for the plaintiff.

2. If the court find from the evidence that the plaintiff and defendant submitted a controversy, in regard to a certain heifer, to Walter Buchanan and H. C. Potts, as arbitrators, and Esquire Ellis, as umpire, to decide if the arbitrators could not agree; mutually agreed to abide by and perform such award as the arbitrators should make, or such as the said Ellis should make if said arbitrators could not agree, and that the said arbitrators, after hearing the evidence, awarded and published that if the defendant retained the heifer he was to pay plaintiff $15 and all costs incurred before such arbitrators, and if the court finds that defendant then elected to retain said heifer and pay said costs, and did then pay a part of said costs, then the finding should be for the plaintiff.

The court also refused the following instructions asked by the defendant, to which he excepted:

1. The court sitting as a jury declares the law to be

that under the pleadings and evidence in this case, the plaintiff is not entitled to recover.

2.   If the court, sitting as a jury, believe from the evidence that the plaintiff and defendant mutually agreed, to and did arbitrate and submit the question, as to whether the plaintiff or defendant was the owner of a certain white heifer, mentioned in plaintiff's statement, to Buchanan, H. C. Potts and Esquire Ellis, a justice of the peace of Chero-kee county, Kansas, as arbitrators, and that said arbitrators awarded that plaintiff was the owner of said heifer, and assessed the value of said heifer at $15, and further awarded that if defendant retained said heifer, he should pay the plaintiff the sum of $15 and all the costs and expenses of said arbitration; or if the plaintiff retained the heifer, then the plaintiff was to pay one-half the costs and expenses of said arbitration, then the plaintiff cannot recover in this action.

3.   That if the arbitrators took into consideration and made an award about matter not involved in the submission to them, then the award is unauthorized and void as to such matter; therefore, if the court, sitting as a jury, believe from the evidence that the said arbitrators awarded and de-termined, that in the event that defendant retained the heifer in controversy, he should pay the plaintiff the sum of $15, and all the costs and expenses of said arbitration, or if the plaintiff retained the heifer, then the plaintiff was to pay one-half the costs and expenses of said arbitration, then said award is void, and the court should find for the de-fendant.

4.   If the court find from the evidence that all the ar-bitrators did not join or concur in the award sued on, the plaintiff cannot recover in this action.

5.   If the court believe from the evidence that Esquire Ellis did not consider himself as one of the arbitrators, but merely as an umpire, believing and thinking that he had no voice or vote in the matter, as to what award should be made, unless the other arbitrators, Buchanan and Potts,

failed to agree, and that said Ellis, acting upon the idea that he sustained no other relation to the arbitration than that of an umpire, or third person called in to preside over the deliberations and to act only in the event that the other arbitrators failed to agree, and that said Buchanan and Potts did agree upon the award and reported the same to said Ellis, who thereupon announced the award declared upon in this case, thinking that he was announcing the award and determination of the said Buchanan and Potts only, and not joining or concurring, or intending to join or concur in such award, then the finding will be for the defendant.

Whereupon the court found the issues for the plaintiff, and also found that the defendant was indebted to the plaintiff in the sum of $28.20, and gave judgment accordingly. The usual motions for new trial and in arrest of judgment were made and overruled, to which the defendant excepted and brings the case here by appeal.

The only questions before us grow out of the action of the trial court in giving and refusing instructions and in overruling motions for new trial and in arrest. The instructions and the motions raise the same questions, and may, therefore, be considered together. It is contended for defendant that the award in this cause is inadmissible and void: 1st, Because it decides upon more than was submitted, and this action is to enforce the entire award, as made, to-wit; ownership, value of heifer and the costs. 2nd, Because the submission was to three arbitrators, with no provision for a less number to act, while the record shows that the award was made by two only, and that the third did not concur in or approve the same. 3rd, that there was no act of defendant upon the announcement of the award, or subsequent, that estopped him from controverting the validity or force of the award, or that renders him liable to the plaintiff for the amount sued for, or any part thereof. These, we believe, are the principal points relied on by the defendant for a reversal in this cause.

In the first place, let us see to what extent, if at all, these objections are true, when tested by the facts in this record. Secondly, If true, what force or validity do they possess, or what application do they have to the facts of this case or the cause of action in this record. And lastly, Let us ascertain, if we can, what is the cause of action really sought to be enforced by this suit, and actually passed upon and decided by the court in its finding and judgment herein.

It will be remembered, in the first place, that the arbitration in question is at common law, and not under the 1. ARBITRATION. statute. In the next place it may be conceded, for such is the law, that if the award is broader than the submission, and constitutes one entirety; or if the several parts are so connected, as to be conditional and dependent upon one another, then the award is not valid and will not support an action. Morse on Arbitration, 178, 181. It is equally true that an award may be valid in part and void or invalid as to the remainder. Morse on Arbitration, 453. If the award consists of several parts, one of which is complete in itself and wholly separable from and independent of the others, and that part is covered by the submission, it is valid and may be sustained while the portions outside the submission will be rejected. Morse on Arbitration, 453. The award in this record, as appears by inspection, has two parts, the first of which is complete in itself and wholly separable and distinct from the latter. This part also, as shown by the record, was distinctly submitted, and specifically decided by the award, and tested by the above rule is valid and conclusively binding, whilst the latter part is confessedly outside the submission, and as an award (if such it can be called) of itself, has no force or validity whatever. On its face, however, it does not purport to decide anything, and is in no just sense an award. At most, it is in the nature of a proposition from the arbitrators to the plaintiff and defendant, which they were at perfect liberty to reject or accept. If, however, they see proper to accept it and in

fact do accept it, why are they not bound thereby? Whether they did accept it or not (being the question at issue) depends upon what they did and said, in reference to the same, and that was a matter in evidence, to be judged of and passed upon by the court that tried the cause. If they did accept the proposition, the legal effect of that acceptance was to pass the title to the heifer from the plaintiff to the defendant, and render the latter liable to the former for the value of the heifer and the cost of the arbitration as the same had been ascertained by the arbitrators, and that also was a matter of evidence, submitted to and passed upon by the court. If also, as we think the evidence abundantly shows, the defendant thereupon elected to retain the heifer, which he already had, and agreed to pay its value and the cost, as aforesaid, and if the plaintiff consented and acceded to the same, nothing else whatever remained for the plaintiff to do in order to render the contract complete and binding. Benjamin on Sales, §§ 308, 311, 315.

Again, we think the further objection of the defendant that this action was to enforce the entire award as made: 2. ——: ratification. ownership, value of the heifer and the cost, manifestly is not well taken. The statement filed before the justice consists of three divisions. The first has reference to the wrongful taking and conversion of the heifer; the second, to the arbitration that followed, and the third to what transpired between plaintiff and defendant in reference thereto, upon the announcement of the award, and, as we have already seen, this last branch of the statement manifestly constitutes the cause of action sought to be enforced by this suit. The alleged conversion was but the inducement to the arbitration that followed, and that, in turn, became the inducement to what transpired between the parties upon the announcement of the award. The award, therefore, it is apparent, is the inducement to and not the subject of the action. The real purpose of the suit, as we have already seen, was to enforce the legal effect of what took place between the parties upon the announce-

ment of the award, and that as we have also seen, amounted, in legal contemplation, to a "bargain and sale," by which the ownership of the heifer (conclusively settled by the award, to have been with the plaintiff,) was transferred from plaintiff to defendant, and a corresponding liability imposed on him to pay for it, as ascertained by the award. In addition to this it may be stated, for such is the law, that there is respectable authority for the position, that conceding the latter clause of the award was in its nature really a part thereof, and conceding further, that it possessed no validity for want of prior authority, if not absolutely void, that defect may be waived by a subsequent ratification. The doctrine on which this position rests, is that arbitrators are but the chosen agents of the parties, and like any other agents, if they exceed their authority, in any particular, to that extent their action is wanting in validity, yet, as in other matters of agency, the defect may be waived, and is cured by subsequent ratification, and that, in such cases, no new consideration is necessary to uphold the ratification. Morse on Arbitration, 106, 170, 171, 174, 175; *Ferris v. Thaw*, 72 Mo. 446; *National Bank v. Gay*, 63 Mo. 39; Abbott's Trial Ev., 465, 467; 6 Waite's Actions and Defences, 537; *Bullitt v. Musgrave*, 3 Gill (Md.) 32; *Hamlin v. Duke*, 28 Mo. 166; *Squires v. Anderson*, 54 Mo. 193.

As to the further point, that the award in question was made by one only of the arbitrators, and that the third did

3. —— : witness.      not concur in or approve the same, the record fails to sustain the objection. Both plaintiff and defendant agree that all three were chosen as arbitrators; that they all met as such, and after hearing the testimony retired for consultation and determination, and upon their return, announced their award. In this the parties are supported by all the other witnesses, including one of the arbitrators, except the witness Ellis, who testified that he was one of the parties selected, but he understood and considered that he was an umpire only, and not an arbitrator, and that he acted only in that capacity, that he did not approve

or concur in the award, but made no announcement of his consent or non-concurrence at or before the making or publishing of the award, and that he made the announcement of said award at the request of the other two. This private understanding of Ellis as to the capacity in which he was acting unannounced, or otherwise made known to his fellows, the parties or the public, at or before the announcement of the award, is not permissible in law, to impeach or invalidate the award; neither was he a competent witness, in a suit upon the award, thus to nullify his official action as such. Indeed the law is well settled that the dissent of an arbitrator from the award of his fellows must be expressed at or before the time of publication. If he unites with them in making the award, or is present at the publication and announces the award to be the decision of the arbitrators, he will not be heard afterward to impeach the award by testifying that in fact he did not concur or unite with them in making and publishing the same. For such a purpose he is an incompetent witness. Like a juror, he cannot be called to impeach his award, but like him he may be called to sustain it. Morse on Arbitration, 162, 164; *Stone v. Atwood,* 28 Ill. 30, 42, 43; Abbott's Trial Ev., 468, 469, 470; Waite's Actions and Defences, 554; 5 Cow. 383, 384, 387, 388; 4 Cush. 317, 321; 20 Barb. 482; 10 Met. 431, 433.. If it were otherwise it would be in the power of any one of the arbitrators, in any award, by testifying as Ellis did in this case, to overthrow the same. Such, manifestly, is not the law. Public policy forbids it.

The only remaining objection of the defendant, that there was no act of his, upon the announcement of the award, or subsequently, by which he was estopped from denying its validity or asserting his right, is not sustained by the record, and has already been considered and disposed of adversely to his claim.

As to the instructions, it may be sufficient to say: 1st, That while the phraseology of the plaintiff's instructions

may be subject to verbal criticism, yet they submitted fairly the whole question arising on all the evidence before the court. There was, therefore, no error in this particular.

Instructions numbered two and three for defendant, are objectionable in that they ignore altogether all that part of the testimony tending to show that the defendant, after the award was made and announced, elected to retain the heifer and pay value and the cost of arbitration, as ascertained and proposed by the arbitrators. The court may have believed all that these instructions assumed, and yet under all the facts in evidence, the plaintiff might still be entitled to recover. *Porter v. Harrison*, 52 Mo. 521; *Roysden v. Trumbo*, 52 Mo. 35; *Ellis v. McPike*, 50 Mo. 574; 50 Mo. 516; 56 Mo. 289; 56 Mo. 296.

As to the fourth and fifth instructions of defendant, it may be sufficient to say, as we have already seen, that there was no competent evidence before the court on which to base them, and in that view it was not error to refuse them.

As no error appears in the record materially affecting the defendant's interests to his prejudice, the judgment of the court is affirmed. All concur, except HENRY, J., who dissents.