# THE HOME INSURANCE COMPANY OF NEW YORK *vs.* M. SCHIFFS' SONS.

*Fire Insurance—Appraisal of Loss—Partial Disagreement of Appraisers—Selection of Third Party as Umpire and not as Third Arbitrator—Invalidity of Award—Action on Policy—Interest.*

Where a policy of fire insurance provides that in the event of a disagreement between the parties as to the amount of a loss they shall each appoint an appraiser who shall select an umpire, and the appraisers shall eliminate the loss, and if they fail to agree shall submit their differences to the umpire, and the award of any two shall determine the amount of the loss, then the third person so chosen is in legal effect a third arbitrator and not an umpire, although so designated. Such stipulation contemplates that the third person thus selected shall act in conjunction with the appraisers and not take the case out of their hands in the event of a disagreement, as an umpire would do, and arrive at his conclusions alone. Under such a provision an award made by two of the three arbitrators is valid.

But when under a policy containing such a clause of arbitration the parties agree that the third person selected by their appraisers shall act as umpire on matters of difference between them only, then he is not a third arbitrator. And if the appraisers agree as to the amount of the loss on some of the articles covered by the policy but disagree as to the amount of the loss on other articles, then an award made by one of the appraisers and the umpire which includes the loss on all the articles is not within the terms of the submission by which the umpire's authority to act is definitely restricted to the matters of disagreement, and by which no authority is conferred upon any two of the three to render an award of the entire loss.

Evidence that the award so made stated accurately the loss agreed to by the two appraisers on the articles as to which there was no disagreement as well as the finding by the umpire as to the articles on which they disagreed, does not render valid the award, since, as to the losses agreed on, the award is that of but one appraiser and consequently not in conformity with the submission.

When the award made by the arbitrators as to the amount of the loss under a fire insurance policy is invalid, and the insured is not responsible for the failure of the arbitration, he is entitled to recover on the policy, and evidence is admissible to show that his actual loss was greater than the amount stated in the invalid award.

If the appraisal of the loss under a policy is invalid, the jury is authorized to allow interest on the amount of the loss, beginning sixty days after such time as the insured complied with the provisions of the policy respecting the furnishing of proof of loss.

After the failure of the insurer and the insured to agree as to the amount of the damage caused by fire to the goods insured they appointed arbitrators in pursuance of a provision in the policy providing that in the event of a disagreement as to the amount of loss the same shall be ascertained by two appraisers, the insured and the company each selecting one, and the two so chosen shall first select an umpire; the appraisers shall then estimate the loss and failing to agree shall submit their differences to the umpire, and the award of any two shall determine the amount of the loss. The appraisal agreement by which the parties appointed their respective appraisers provided that the latter should appoint a third person "who shall act as umpire on matters of difference only." The two appraisers and the umpire went together to the premises of the insured and examined the goods damaged by the fire. The appraisers agreed as to the amount of the loss on all the articles covered by the policy except two and then they separated. On the same day the umpire and one of the appraisers signed an award setting forth the loss agreed upon by the two appraisers and the amount of the loss fixed by the umpire on the two items as to which they differed. The other appraiser refused to sign this award. In an action on the policy, *held*, that the award so made was not binding on the parties because it was not in conformity with the submission, which authorized the umpire to act only in matters upon which the appraisers disagreed, and that an action lies on the policy without any award having been made.

Appeal from the Superior Court of Baltimore (Phelps, J.)

The cause was argued before McSherry, C. J., Briscoe, Page, Boyd, Pearce, Schmucker, Jones and Burke, JJ.

*George Whitelock* and *John B. Deming*, for the appellants.

*Charles W. Heuisler* and *E. Allan Sauerwein, Jr.*, for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

The appellees in this case sued the appellant in assumpsit, in the Superior Court of Baltimore City, to recover the loss by fire on certain merchandise and chattels covered by one of its policies of insurance. The appellant, as defendant below, filed the general issue pleas and also set up, by an appropriate special plea, that the amount of loss upon the insured property had been determined by an arbitration and award conducted in accordance with the terms of the policy and that its liability was limited to the amount of the award. The appellees, as plaintiffs, joined issue on the general issue pleas and replied to the special plea that appraisers and an umpire had been appointed pursuant to the provisions of the policy to determine the amount of the loss, but that, without default on the plaintiffs' part, there had been no appraisal or award thereof in conformity with the provisions of the policy. The trial of the case resulted in a verdict and judgment for the plaintiffs for a larger sum than that found by the alleged award to be due. From that judgment the defendant took this appeal.

No question of pleading, strictly speaking, is presented by the record. The happening of a loss by damage to the insured property within the terms of the policy is conceded and only the extent of the loss is in controversy. The contention of the appellant is that the award set up by its plea and produced in evidence conforms on its face to the terms of the submission and is therefore conclusive of the amount of the loss, and that no extrinsic evidence of the extent of the loss or of other matters *dehors* the award is admissible to defeat it in the present action at law, but that it is impeachable, if at all, only in a separate suit in equity brought for that purpose.

The appellees on the contrary insist that the award does not on its face conform to the submission, and that the question of its conformity in fact and in substance to the submission was one for the jury to whom the appellees were entitled

to have submitted under proper instructions from the Court the evidence in the record which was admitted at the trial below tending to impeach the award, and also the evidence tending to show that the loss was greater than that found by the award.

There is no allegation in the pleadings of fraud on the part of either of the appraisers or the umpire.

The testimony, to which the defendant objected, tending to impeach the award, or to show a loss greater than it gave to the plaintiffs, was allowed to go in subject to exception, and the question of its admissibility was raised by two motions to strike it out, made at the close of the evidence. The only exceptions in the record are to the Court's refusal to grant those motions and to its rulings on the prayers.

It appears from the record that the policy on which the suit was brought covered the appellant's "stock of piece goods, ready-made clothing and tailor's triumings" to the extent of $1,500 and "paper patterns" to the extent of $500. It was in the New York Standard form and contained the following provision: "In the event of a disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

The goods, etc., of the appellants were covered by other policies of insurance some of which included also the store furniture and fixtures.

The fire causing the loss occurred on November 15th, 1904, and the assured and the underwriters, being unable to agree as to the extent of the loss, provided for its ascertainment by

appraisal under an agreement of which the following are the material portions:

"Appraisal Agreement,

"It is hereby agreed by M. Schiff's Sons of the first part, and the Home Insurance Company, of New York, N. Y., and other insurance companies signing this agreement, each acting for itself and each a party of the second part, they having failed to agree as to the amont of loss and damage by fire, which occurred 15th day of November, 1904, sustained by the parties of the first part herein named, to the property described in the policies of insurance issued to said parties of the first part by the parties of the second part, that John S. Dingle and Charles A. Cooley (together with a third person to be first appointed by them as required by said policies of insurance, who shall act as umpire on matters of difference only), shall appraise and estimate the actual cash value of, and the loss and damage by fire to, the property described in said policies as follows:

"On stock of ready-made clothing, piece goods and tailor's trimmings and

"On store furniture and fixtures, contained on the first and second floors and in cellar of the four-story brick building, situate No. 121 North Eutaw street, and on first floor of building No. 123, adjoining and communicating, Baltimore, Md. Building is otherwise occupied for the manufacture of ladies cloaks and suits.    On patterns."

The appraisers Dingle and Cooley duly qualified by taking the oath usual in such cases and selected as umpire Henry W. Straus who qualified in the same way.    The appraisers and umpire then went together to the insured's premises on December 5th, 1904, and spent three or four hours in an effort to make the appraisement.    They separated about four o'clock in the afternoon without coming to a complete agreement, Dingle going to his home and Cooley and Straus going to the office of the latter where they made the following award in the absence of Dingle:

"Appraisers  Award.

"Having. carefully estimated and appraised the value of, and the loss and damage by fire to, the property described in the foregoing agreement, and in accordance with the terms and

conditions of the policies of insurance therein referred to, we hereby certify the actual cash value of said property to be ($8,435.33) eight thousand four hundred thirty-five 33-100 dollars, and the loss and damage thereon to be ($2,025), two thousand and twenty-five dollars, divided as follows:

| | |
|---|---:|
| On stock.......................................................................... | 1,568 |
| On furniture and fix......................................................... | 25 |
| On patterns....................................................................... | 100 |
| On clothing of others ..................................................... | 332 |

Witness our signatures hereto this fifth day of December, 1904, at Baltimore.   Sound value as follows :

| | |
|---|---:|
| Stock........................................................................$7,070 33 | |
| Furniture and fixtures... . ............... ....................... | 225 00 |
| Patterns........................................................................... | 500 00 |
| Clothing of others........................................................... | 415 00 |

Charles A. Cooley,
Appraisers.
Henry W. Straus, Umpire.''

The plaintiffs offered the testimony of a number of witnesses, which went in subject to exception, tending to prove that both the sound value of the insured property and the loss thereon by the fire were greatly in excess of the amounts stated in the award. John S. Dingle, the appraiser, who had been nominated by the plaintiffs, testified on their behalf, subject to exception, touching the conduct and transactions of the appraisers and umpire in making the appraisal and award.   His evidence, although not very positive or consistent, tended to prove that the two appraisers and the umpire went together to the plaintiff's premises where the insured goods were and examined the stock located on the second floor, consisting of clothing wholly or partly completed, tailor's trimmings and patterns, and came to a practical agreement as to the loss on all of it except the patterns. That they made no thorough or proper examination of the woolen piece goods which were located on the first floor, but they made ineffectual efforts to arbitrarily agree upon the amount of the loss on them before they separated.   That he, Dingle, not having intended to abandon the effort to reach an agreement went to the premises the next morning expecting the appraise-

ment to be continued but found no one except the watchman there and that later in the day he was informed by Straus of the making of the award on the previous evening. That he refused to sign the award, although on cross-examination he admitted that if his estimate on the loss of the woolen piece goods had been acquiesced in by Cooley and Straus he would have signed it.

Cooley, the other appraiser, and Straus, the umpire, both testified on behalf of the defendant insurance company. Their testimony substantially agreed with that of Dingle, as to the transactions of the three at the attempted appraisement on December 5th, 1904, except that it strongly tended to prove that a thorough and complete examination of the woolen piece goods had been made on that occasion and that a final agreement was then and there arrived at as to the loss upon all of the articles covered by the defendant's policy except the woolen piece goods and the patterns. It further tended to prove that the amount of loss on the woolen piece goods and patterns was fixed by Straus as umpire after Dingle and Cooley had disagreed on it and that the award was based upon and was intended to present both the loss agreed upon by the appraisers on all articles except the woolen piece goods and patterns and the loss fixed by the umpire on those two items.

At the close of the evidence the plaintiffs offered five prayers, of which the Court granted the fifth and rejected the others. The defendant also offered five prayers, of which the Court granted the fourth with certain modifications and rejected the others. We will now consider the propriety of the Court's action on the prayers and the motions to strike out the evidence which had been admitted subject to exception.

The substantial controversy in the case being over the amount of the loss we are met at the threshold of our inquiry by the question of the efficacy of the award which the defendant set up as a conclusive ascertainment of the extent of its liability. This question was raised below by the defendant's second prayer, which asked the Court to assert that the award was final and conclusive upon the parties because it conformed

on its face to the submission of November 30th, 1904, and the Court passed upon the question by rejecting the prayer.

In order to ascertain whether the award on its face conforms to the submission it is essential to first ascertain what those instruments in fact say. The submission mentioned in the prayer is the appraisal agreement of November 30th, 1904, but, as that agreement provides that the appraisal shall be made according to "the terms and provisions of the policy;" the true terms of the submission must be gathered from the agreement of November 30th and the appraisal clause of the policy taken together. The appraisal clause of the policy stipulates that in the event of a disagreement between the parties as to the amount of a loss it shall be ascertained by two appraisers one to be chosen by each party, the two to first select a third person, who is there designated an "umpire." The appraisers are then together to estimate and appraise the loss, stating separately the sound value and damage, and failing to agree are to submit their differences to the umpire. Then follows the provision that the written award of any two shall be final. The power to any two to make the award would, under the circumstances, almost certainly be exercised by one of the appraisers jointly with the so-called umpire who, in order to enable him to properly discharge his duty, would be compelled to consider and pass upon the entire controversy; for it cannot be supposed that he was intended to co-operate in rendering an award of matters of some of which he was ignorant. The third person to be chosen by the two appraisers under that clause of the policy must have been intended, if the appraisers failed to agree, to act in conjunction with them and not to take the case out of their hands as an umpire would do and arrive at his conclusions alone. Such a person so chosen is in legal contemplation and effect a third arbitrator and not an umpire, even though he be designated an "umpire" in the submission. *Morse on Arbitration and Award*, p. 242; 3 *Cyc.*, 655; *Mullins* v. *Arnold*, 4 Sneed, 262. In *Mullins* v. *Arnold*, which was an action of debt on an award, the submission provided that in case the two arbitrators

selected could not agree they should "elect a third disinterested person as umpire and in that case the determination of the majority shall be the award," and the Court held that the third person elected by the two arbitrators must be regarded as a third arbitrator, although he was erroneously called an umpire.

The conditions under which a third person thus chosen would be an umpire were clearly distinguished from those under which he would be a third arbitrator by this Court in *Rigdon* v. *Martin*, 6 H. & J. 403. In that case the cause was referred by an order of Court to two arbitrators who were, if they disagreed, to choose a third person and they, or any two of them, after adjusting the dispute between the parties were directed to return their award in writing to the Court. In the opinion the Court there say: "The submission did not authorize an umpire to be appointed; for an umpire technically speaking when he takes charge of the case, takes it exclusively to himself and divests the original arbitrators of all power to proceed in it and the award is to be made by him alone. 3 *Bl. Com.*, 15. The submission in this case is different. If Collins and Jamison (the two arbitrators) could not agree they were to choose a third person. Their power to proceed did not cease upon this appointment, but they were to go on conjointly with him and the award of all three or any two of them was to be binding on the parties."

If therefore in the present case the appraisal clause of the policy had constituted the entire submission, an award made by two of three persons chosen under the provisions of that clause would, if otherwise regular, have conformed to the submission and the question of its exemption for that reason from impeachment by extrinsic evidence would have been presented for our decision by the record before us.

But the parties to this suit did not, after the fire occurred and they failed to agree upon the loss, proceed to appoint appraisers under the appraisal clause of the policy to ascertain the amount of the loss in conformity with its provisions. They entered into the new appraisal agreement of November

30th, 1904, which modifies the terms of the policy in the important respect that it limits the authority of the umpire to be selected by the appraisers, by declaring distinctly that he "*shall act as umpire on matters of difference only*," and is silent as to any authority on his part to unite in an award of the whole controversy in case of a disagreement by the arbitrators as to only a portion of it, and is also silent as to the power of any two of the three to render an award. It is true that this agreement provides generally that the appraisement is to be made in accordance with the terms and conditions of the policy, but the statement that the umpire to be chosen by the appraisers shall act on matters of difference *only* contains a specific definition of his character and duties which must be held to control the general expressions found elsewhere in the agreement and to exclude the theory that he is to act as to any other than matters of difference. We are therefore compelled to hold that Straus, when he was chosen as umpire by the two appraisers, was thereby invested with the power and authority only of an umpire in the strict sense of that term and was authorized to act upon and decide only the matters on which the appraisers failed to agree. He was not authorized to act with them as a third appraiser or to form one of a majority of the three to render an award of the entire loss, it appearing from the evidence that the two appraisers had agreed as to the loss on all of the articles covered by the policy except the woolen goods and patterns. The award therefore jointly made by the appraiser Cooley and the umpire Straus is not on its face in conformity to the submission, and the Court below committed no error in rejecting the defendant's second prayer and its motion to strike out the testimony tending to impeach the award.

In the *Hartford Fire Ins. Co. et al.* v. *Bonner Mer. Co.*, 44 F. R. 151, which was affirmed by the U. S. Circuit Court of Appeals of the Ninth Circuit in 56 F. R. 378, the appraisal clause in the large number of policies involved in that case, provided that the two appraisers in case they failed to agree should select a third person "to act as umpire and decide be-

tween the others in matters of difference only," and further provided that any two of the three could make the award. The umpire and one of the appraisers made an award of the entire loss after the two appraisers had altogether failed to come to any agreement. It was held in that case, which was a suit in equity to set aside the award, that, although the third person chosen by the appraisers must under the terms of the submission be regarded as an umpire in the strict sense and not a third arbitrator, the award was valid as it contained his determination of the loss after there had been a total disagreemene of the appraisers, and that his decision thus made was not avoided because one of the appraisers had joined in the award. It was there further held that the parties to the case might have intended to accept the award of the umpire only on condition that it met the approval of one of the appraisers.

The Hartford Fire Ins. Co.'s case differs from the one at bar in that the report of the former case distinctly shows that the award there made was in fact *the decision by the umpire of the whole controversy, the appraisers* having entirely *disagreed*, whereas in the present case it affirmatively appears from the evidence introduced by the defendant that the appraisers agreed upon the loss on all but two of the insured articles, so that it was only as to those two articles that the umpire had any power to act. Even if therefore we assume that the appraisal agreement of November 30th, 1904, which constitutes the latest expression of the intention of the parties before us, contemplated that one of the appraisers should unite with the umpire in his award of the matters as to which the two appraisers had disagreed, the award before us does not on its face conform to the submission. In the first place it includes the loss, as well on the articles on which there was no disagreement as those on which the appraisers disagreed, without accurately separating the several amounts; and in the second place even if it did correctly segregate the losses it would be, *quoad* the losses on which the appraisers had agreed, the award of but one of the three as by the terms of the submission the umpire's authority to act is definitely restricted to the matters

of disagreement. The award does not on its face segregate the loss on the woolen goods from that on the portion of the stock consisting of tailors trimmings, &c., but states in one item the gross loss on "stock."

The defendant introduced evidence at the trial of the case tending to prove that the award in fact embodied all of the findings of the appraisers of the matters on which they agreed and those by the umpire of the matters on which the appraisers failed to agree, even though it did not accurately segregate the separate findings on its face. But if the fact thus sought to be proven be admitted the award would fail to conform to the submission for it would still be, *quoad* the losses agreed on by the appraisers, the award of but one appraiser. If all three had signed the award, the Court in exercise of its settled policy of favorably expounding awards might have held that neither the joinder of the umpire as to the items agreed on by the appraisers nor the joinder of the appraisers as to the items decided by the umpire would have invalidated the award. Or two concurrent awards might have been made, one by the two appraisers of the items on which they agreed and the other by the umpire of the items on which the appraisers disagreed, and the entire loss ascertained in that manner as was done in *Finney* v. *Miller*, 1 Bailey (S. C.) 81. But there is no warrantable process of construction by which, under the submission in this case, an award of the items of loss agreed on by the appraisers, when made by only one of them, can be cured by the joinder therein of the umpire who was expressly restrained by the submission from acting in reference to matters on which the appraisers agreed.

Having come to the conclusion that the award does not either on its face or in fact conform to the terms of the submission and is therefore invalid it becomes unnecessary for us to notice the other prayers of the appellant all of which assume that the award is valid on its face or when supported by the evidence. It is sufficient to say that the ruling thereon afford no ground for a reversal of the judgment.

The only objection urged by the appellant to the one prayer

(the fifth) of the plaintiff which was granted is that it allows interest, in the event of a verdict for the plaintiff, on the amount of the loss from the expiration of sixty days after such time as the jury may find the plaintiffs complied with the provisions of the policy respecting the furnishing of proof of loss.   This feature of the prayer is objected to on the ground that it does not accord with the provisions of the policy in reference to the time when the loss is to be payable.

The record shows that the policy provides that when an appraisal has been required the award of the appraisers must be furnished to the company before the loss becomes payable, but, in view of what we have said of the invalidity of the award before us and its failure to affect the appellees right of recovery, there was no reversible error in granting that prayer.

The recent cases of *The Caledonian Ins. Co.* v. *Traub*, which was three times before us in 80 Md. 214, 83 Md. 524 and 86 Md. 86, and the *Connecticut Ins. Co. v. Cohen*, 97 Md. 294, were much discussed on the briefs of counsel and at the hearing of the present appeal but neither of those cases was decided upon the question of the power on an umpire, whose function and authority was expressly limited by the submission to matters of difference only, to form one of two persons to make an award of matters in reference to which the appraisers had not differed. · In Cohen's case no award at all was before the Court as the appraisers never got so far as to agree upon an umpire.   In Traub's case there was an award made by one appraiser and the umpire which the Court held invalid because of the withdrawal of the other appraiser without any apparent good reason before the appraisement had been completed.   In that case, however, the Court said on page 531 of 83 Md. that "the umpire had no authority to act except where they (the appraisers) differed in their estimates."

·.    The cases of Traub and Cohen have an important bearing upon the one now under consideration in that it was held in both of them that the insured was not prevented from recovering on his policy, for a loss sustained thereunder, by the failure of an attempt to adjust the loss by appraisement, if his

own conduct in that connection was free from fault. In Traub's case the Court said, on page 533 of 83 Md., "If the appraisement failed without the fault of the insured, the failure would not be any impediment to their right of recovery if they could maintain their suit on other grounds." When the same case came before this Court again in 86 Md. 302, the law of the case was held to have been fully discussed and finally settled on the former appeals.

In Cohen's case, where the appraisers failed to agree upon an umpire, without any fault or connivance on the part of the assured, the legal proposition just quoted from Traub's case was relied on and the relation of the failure of an attempted adjustment by appraisement, of a loss under a policy of insurance, to the right of the insured to recover in an action against the underwriter was fully discussed and the conclusion again announced that the failure of an appraisement through the conduct of the appraisers, without the fault of the insured interposes no impediment to his right to recover on his policy. As there is no evidence in the present case tending to connect the assured with the failure of the appraisement or to show a want of good faith on their part, the failure of the appraisement interposes no obstacle to their right to recover the full amount of their loss. The learned Judge below heretofore committed no error in refusing the motion to strike out the evidence, which had been admitted subject to exception, tending to show an actual loss by the fire greater than the amount stated in the invalid award.

Finding no error in the rulings of the Court below we will affirm the judgment appealed from.

*Judgment affirmed with costs.*

(Decided June 16th, 1906.)