CONTINENTAL BANK SUPPLY COMPANY, APPELLANT, v. INTERNATIONAL BROTHERHOOD OF BOOKBINDERS, LOCAL NO. 243, MEXICO, MISSOURI, AND IRENE ANGERT, LILLY PILTOSKI AND CLARA HARSHBARGER, RESPONDENTS.—201 S. W. (2d) 531.

Kansas City Court of Appeals. Opinion delivered March 3, 1947.

1248

*J. W. Buffington* and *Clay C. Rogers* for appellant.

1250

*Don C. Carter* for respondents.

BLAND, P. J.—This is a suit in equity, by which plaintiff seeks to set aside an award made by a board of arbitrators in a labor dispute. The judgment was for defendants and plaintiff has appealed.

Plaintiff is a corporation with its office and place of business located in Mexico, Missouri. Defendant, International Brotherhood of Bookbinders, No. 243, is a voluntary association of employees of plaintiff affiliated with the American Federation of Labor; and defendants, Angert, Piltoski and Harshbarger are members and officers of said association.

On or about August 10, 1942, the members of defendants association left plaintiff's plant on a strike, whereupon negotiations were begun by plaintiff and officers of the union, resulting in a written stipulation reciting that the employees would return to work and continue to work while negotiations were being carried on by the company and its employees seeking a satisfactory contract of employment; that if such a contract could not be entered into at the end of 10 days the parties would promptly submit any differences to a board of arbitrators, consisting of three arbitrators; that each party should select an arbitrator and the two a third one within three days and, in the event that the two arbitrators could not agree on a third the latter should be named by the United States Conciliation Service.

Following this stipulation negotiations were begun between the parties seeking an agreement on a contract covering working conditions, wage scale and other conditions of employment. These negotiations were carried on by the plaintiff through its general manager and its attorney, J. W. Buffington, and the employees were represented by Mr. D. T. Welch, a representative of the International Brotherhood of Bookbinders, with the assistance of some others. These negotiations were not concluded within the 10 day period, but later when it was found that no agreement could be reached with reference to wages, seniority and the closed shop, it was then determined that it was necessary to resort to arbitration.

Under the provisions of the submission the employees chose Mr. H. R. Flegal, and the plaintiff chose Mr. W. S. Eller. The two being

unable to agree, Mr. Clarence M. Updegraff was named as an arbitrator by the United States Conciliation Service.

On September 24, 1942, Eller, Flegal and Updegraff went to the office of Mr. Buffington in Mexico and proceeded to hear the evidence. Immediately after the board of arbitrators convened an objection was made by Buffington challenging the rights of Mr. Flegal to serve as a member of the board, for the reason that he was a member of a kindred union. Flegal refused to disqualify and Mr. Updegraff proposed that in case of a disagreement between the other two members of the board authority be given him to make the decision and write the opinion. According to the testimony of Mr. Buffington, a witness for plaintiff, the witness replied that "would constitute only a one man board" but, having in mind what he thought about the disqualification of Mr. Flegal, the witness concluded that Updegraff's proposition was satisfactory but Mr. Welch objected. Buffington testified that there was no further agreement about the authority and the hearing proceeded. According to Mr. Welch, who testified for the defendants, when the disqualification of Mr. Flegal was raised, Mr. Buffington suggested that plaintiff "would be willing to submit the entire proceeding to arbitration with Mr. Updegraff sitting as an umpire or arbitrator", but the witness objected to this. Mr. Welch further testified that it was finally "agreed by both parties that where any question came up in the decision of the Board of Arbitration that could not be decided by a majority, Mr. Updegraff would be the sole arbiter on that part".

It is permissible, under facts like those in this case, to amend the submission by parol. [6 C. J. S., p. 173; 3 Am. Juris., p. 890.]

The proceedings lasted for three days and at the close of the evidence, Updegraff, Flegal and Ellers retired to a back room in Mr. Buffington's office to consider the case. They remained there for a short time and adjourned without having announced an award. However, in December 1942 a purported award, signed by Updegraff, alone, was sent out by him. The purported award was later approved by the National War Labor Board. Thereafter, plaintiff appeared before the Regional National War Labor Board, and opposed the approval of the purported award on various grounds, all of which were overruled.

The purported award recites the challenge of Flegal by the plaintiff and states: ":The undersigned appointee of the U. S. Conciliation Service then proposed that in the case of dispute or disagreement between the other two members of the board authority be given to him to make the decision and to write the opinion. It was pointed out that the arbitrators appointed by the parties might each have some extreme convictions favoring their appointers and that the U. S. Department of Labor appointee should therefore act virtually as an umpire. Representatives of the company thereupon offered

to present the matter to him as sole arbitrator but upon behalf of the union objection was made and the parties ultimately agreed that upon any matter in respect to which the majority of the board failed to agree during conference after hearing the evidence the decision should be left to the member appointed by the U. S. Conciliation Service as umpire and that he should write the decision and award''.

This statement by Updegraff in the purported award seems to correspond with the testimony of Welch except that the latter did not testify that it was agreed that Updegraff, after the circumstances recited therein, should write the decision and award. The purported award, on its face, would indicate that Updegraff, Flegal and Eller, all participated in arriving at the conclusions announced in the award but it recites at the close: ''Each arbitrator appointed by one of the contending parties hereto dissents in part''.

The purported award decides the issues as to wages, seniority and closed shop, but there is nothing in it to indicate what matters were in disagreement among the arbitrators and as to what either Flegal or Eller dissented.

Mr. Eller, over the objection of the defendants, testified, that when the three men retired to consider the case they did not consider any issue but decided that Updegraff should write up a summary of the evidence and present it to the arbitrators and ''then we would pass upon it''; that Updegraff never presented any summary of the evidence; that he never had seen the award prepared by Updegraff. As before stated, the purported award was signed by Updegraff, alone. Neither Flegal nor Updegraff testified and no witness testified contrary to Eller.

Plaintiff insists that the court erred in rendering judgment upholding the award for the reason that the purported award and decision is not an award of the members of the board and that Mr. Eller was not consulted in respect to the award; that the purported award is invalid because it is not signed and subscribed to by the arbitrators making the same; that the purported award is invalid for the reason that Updegraff acted in excess of his jurisdiction.

In disposing of the points raised it is necessary to decide whether this is a statutory or common law arbitration. The general rule of the common law is that any civil controversy, whether constituting a cause of action or not, can be submitted to arbitration, . . . [Robinson v. Robinson, 61 N. Y. S. 859, l. c. 860, and authorities there cited; 6 C. J. S. 158.] It is not required that the submission be in any particular form; it can be either in writing or by parol agreement, (6 C. J. S. 160; Searles v. Lum, 81 Mo. App. 607, l. c. 611; Williams v. Perkins, 83 Mo. 379, l. c. 384).

Section 15234 R. S. Mo. 1939, provides for arbitration of certain controversies between parties. It has been held, since the adoption

of the statute, that both the statutory and common law methods of arbitration exist in Missouri as distinct and concurrent remedies. [Thatcher Implement Company v. Brubaker, 193 Mo. App. 627, l. c. 634; Williams v. Perkins, *supra*.]

Plaintiff contends that, since the contract for submission of the issues, in this case, was in writing, this is a statutory proceeding; that the common law is not applicable. If this latter contention be sustained then we will be required to hold that the award is invalid because the subject of the controversy is one that is not within the scope of the Missouri Statute.

Section 15234, *supra,* is substantially the same as the original, of which it is a revision, to-wit: Section 1, Laws of Missouri, 1835, page 71. It provides that parties may submit to arbitration ". . . any controversy which may be existing between them, *which might be the subject of an action.* . . ." (Italics ours.) It was ruled in Bridgman v. Bridgman, 23 Mo. 272, l. c. 273, that the Legislature of 1855 adopted, substantially, the New York revised act regulating the arbitration of controversies. The court indicated that the construction placed on the New York act, by the courts of New York, should be given great weight by the courts of Missouri in construing the Missouri Statute.

The New York courts have construed the phrase "which may be the subject of an action", appearing in the New York Statute, as well as in our own, as meaning "a controversy of which the courts of this state are given jurisdiction," (Robinson v. Robinson, 61 N. Y. S., (2d) 859, l. c. 861), but if a more liberal construction is given the phrase, i. e., "a controversy that could be submitted to and decided by a court" (Robinson v. Robinson, *supra*), this controversy is not one falling within such a definition, or within the terms of the statute. [In re Stern, 285 N. Y. 239, 33 N. E. (2d) 689, 133 A. L. R. 1332; Benedict v. Limited Editions Club, Inc., 39 N. Y. S. (2d) 852; In re Select Operating Corporation, 50 N. Y. S. (2d) 16.]

The parties here were employer and employee. They sought to arrive at the terms of a contract of employment, governing their relations in the future, covering rate of pay, hours to be worked per day and per week, rules for distributing employment during slack periods, seniority rights, and the like. Rights and obligations of that character, when they exist, rest upon contractual relations between parties; but no contract existed between these parties. The cause of the strike is not shown. It may have been due to disagreement caused by some change in policy or practice not strictly of a contractual nature. The very purpose and object of this contract for arbitration was to arrive at the terms of, and to bring into existence, a specific contract setting forth such rights and obligations. ". . . No court can impose a contract upon parties, and under

our statutes arbitrators can deal only with controversies that are open to judicial cognizance''. [Kellus v. Ideal Novelty & Toy Co., 292 N. Y. 459, l. c. 462.] Since no such contractual rights or obligations existed, as between the parties no controversy then existed for the adjudication of which either party could have had recourse to the courts. It was not possible for them to submit their controversy to arbitration under the terms of the statute.

Can the award be sustained as good at common law? Plaintiff contends that, because the submission was in writing, it must be judged by the statute. It claims that all submissions in writing are under the statute.

The Supreme Court held in Bridgman v. Bridgman, *supra*: ''We think, however, that all written submissions are within the statute, . . . '' This statement was, by this court, given a literal interpretation but was not applied in Thatcher Implement Company v. Brubaker, *supra*. In Hamlin v. Duke, 28 Mo. 166, it was held that, for an award to be enforced according to the provisions of the statute, both it and the submission must be in writing, but that the statute was not intended to destroy the legal effect of a parol award made under a parol submission. In Valle v. North Missouri R. R. Company, 37 Mo. 446, l. c. 450, it was held that every submission in writing is under the statute. In Tucker v. Allen, 47 Mo. 488, it was said that since the submission was in writing it was under the statute, citing Bridgman v. Bridgman, *supra,* and other cases. In Wolfe v. Hyatt, 76 Mo. 156, the above language from the Bridgman decision was quoted with approval. In Williams v. Perkins, *supra,* it was held that a written submission is indispensable to a statutory arbitration; that submission either in writing or by parol was good at common law; that our statute is intended to provide an improved method of arbitration; and that the statutory method is not exclusive unless expressly or impliedly so declared therein. [Our statute contains no such declaration or implication and our courts have many times held that both the statutory and common law methods exist as concurrent remedies.]

It is noted that in every case above cited, and in all others examined wherein the court held all written submissions to be under the statute, the controversy submitted was one that could have been the subject of a court action. The rule has never been applied, in any case coming to our attention, except where a cause of action existed and was the subject of controversy.

In construing language used by the court, in any given decision, the language used must be held as referring to the particular case (21 C. J. S. 411; Mayes v. Mayes, 104 S. W. (2d) 1019, l. c. 1023, 342 Mo. 401) and read in the light of the circumstances under which it is used (21 C. J. S. 411; Woodmansee v. Ridge, 123 S. W. (2d)

20, l. c. 23) and of the issues or questions presented, (21 C. J. S. 412; Willott v. Willott, 62 S. W. (2d) 1084, l. c. 1085, 333 Mo. 896, 89 A. L. R. 114). General language will not usually be construed as altering or conflicting with existing and established principles, or so as to contradict established rules. [21 C. J. S. 413.] Such language must be. construed in the light of the issue, as well as the law, under decision. [State v. Murphy, 111 S. W. (2d) 132, l. c. 136, 341 Mo. 1229.]

The common law, as it existed at the time the statute was enacted, authorized the submission, in writing, of controversies of the character here considered. Applying the law to the situation here presented, we think it clear that the Legislature intended only to regulate, by statute, the arbitration of such controversies as might or could be the subject of a cause of action in court, when the same was submitted in writing. That is the effect of the statute when given its plain meaning. The Supreme Court, as we have seen, has repeatedly held that the common law method of arbitration is in full force, except as the same may have been modified by the statute, thereby giving application to the general rule that statutory enactments do not have the effect of repealing the common law on the subject unless it is done by express declaration or by necessary implication, This court applied that rule in the recent case of McCluskey v. Delong, No. 20714 (not yet published).

We cannot presume that the court in Bridgman v. Bridgman, *supra*, and in other cases heretofore cited, intended to apply the rule there declared except to such controversies as are embraced within the provisions of the statute. In such cases only has the rule been declared or applied. It was not intended that the rule should be applied to a case involving an altogether different situation, thereby rendering it impossible for parties to submit a labor dispute to arbitration except under parol agreement which, of itself, would often be subject to misunderstanding or misinterpretation, thereby breeding further ill feeling and strife between the parties. We, therefore, hold that arbitration of the controversy here considered, as submitted in writing, is permissible at common law, and that the statute is not applicable.

Having decided that this is an arbitration proceeding at common law, we next take up the question of the authority of Mr. Updegraff. According to the recitals in the purported award he was a third arbitrator clothed with the usual powers of an arbitrator and, in addition, he had the power to decide any matter in respect to which the majority of the board failed to agree, and that he should write the decision and the award. There is no express recitation in the purported award that he had authority to do more, or, that he had authority to sign the award on behalf of himself and the others who participated

in it. At common law it is necessary that all arbitrators must sign the award in order to make it valid, unless it is agreed in the submission that a less number than all shall sign it and, where a written award is not required by the submission, as in this case, the general rule is that if the award is in writing it must be signed by all the arbitrators whose concurrence is essential to its rendition. [6 C. J. S. 214; See, also, 5 C. J., pp. 117, 96.]

According to the recitations in the purported award it was not necessary that all of the arbitrators sign it for it mentions the word "majority". It was necessary that it be signed by all the arbitrators whose concurrence was essential to make it valid unless there was something in the submission to dispense with the signing thereof by all of the arbitrators and to permit Updegraff to sign it alone. There is nothing in the recitations in the purported award to indicate that Updegraff had authority to sign it alone.

However, if Updegraff was an umpire he was authorized to sign the award alone. [6 C. J. S., p. 215.] The word "umpire" is defined as "one who is to decide the controversy in case the original arbitrators cannot agree". [5 C. J., p. 22; See, also, 5 C. J., p. 105.] "Where an umpire is appointed, and, on disagreement of the arbitrators, has entered on the performance of his duties, the arbitrators become *functo officio.*" [6 C. J. S., p. 185.]

It is quite apparent that Updegraff was not an umpire for the reason that he was to sit with the other two arbitrators and participate in conjunction with them in an attempt to reach a decision. [Home Ins. Co. v. M. Schiff's Sons, (Md.) 64 Atl. 63, 65; Mullins v. Arnold, 4 Sneed (Tenn.) 261.] It was only in the event that any two of the three could not agree upon a decision that he could make the decision alone. It could well be imagine that a condition could arise where there was a difference of opinion among all three selected to arbitrate this controversy as to any of the issues. For instance, it could well happen that each might have a different view as to the amount of wages to be paid. The submission contemplates that where the majority could not agree the decision was to be left to Updegraff and, as to such matters, his authority may be likened to that of an umpire, and he would have authority to decide such matters along and as to any part of the award wherein such matters were decided he could sign it alone, and it would be valid as to that part if all the issues were determined in the whole award. As before stated, although the purported award fails to state what were the disagreements, it does show that there were such, and a majority agreed upon some of them. This is shown by the recital: "Each arbitrator appointed by one of the contending parties hereto dissents in part". [If they dissented in part, it is apparent that there also were some agreement.] Under such circmstances, the award could not be upheld

unless it was signed by, at least, a majority, or, the award could have been made in separate parts, each signed by those necessary to concur therein in order to make it a part of the finding of the board. [See Home Ins. Co. v. M. Schiff's Sons, *supra*, l. c. 67.]

It would appear that the award is invalid because it was not made in accordance with the submission. There is no evidence in the record that the submission was any broader than that recited in the purported award. In fact, the evidence shows that no authority was given Updegraff even to write the decision and award. However, the fact that he did write it, perhaps, would not effect the matter as to its validity if it were otherwise valid.

The award is invalid also for the reason that the undisputed evidence shows that the case was never considered by Flegal or Eller. [Shores et al. v. Bowen, 44 Mo. 396; Mullins v. Arnold, *supra*; 5 C. J., p. 299.] It has been held to be misconduct on the part of an arbitrator to refuse to allow his associates to take part in the proceedings. [5 C. J., p. 191; See, also, Hartford Fire Ins. Co. v. Bonner Mercantile Co., 11 L. R. A. 623, 626 (Fed.).]

However, it is insisted that Eller's testimony is incompetent for the reason that it is claimed that an arbitrator cannot impeach his own award. "With the exception that an arbitrator's testimony cannot be used to impeach an award by showing his own fraud or misconduct, the testimony of arbitrators is generally admissible to prove any matter in connection with the arbitration that can be proved by other parol evidence". [6 C. J. S., p. 284; Ellison v. Weathers, 78 Mo. 115; Valle v. North Missouri R. R. Co., *supra*.] An arbitrator who does not sign the award may testify to acts of misconduct on the part of other arbitrators. [5 C. J., p. 244; Novak v. Rochester German Ins. Co., 156 Ill. App. 352; Central Union Stockyards Co. v. Uvalde Asphalt Pav. Co., 87 Atl. (N. J.) 235; National Bank of the Rep. v. Darragh, 30 Hun. 29.] Eller, not being a party to the purported award, was a competent witness to testify. It is well settled that an award may be impeached for fraud, mistake, or misconduct on the part of the arbitrators, or any one of them, and irregularities in the proceedings. [5 C. J., pp. 179-191; Pac. Lime & Gypsum Co. v. Mo. Bridge & Iron Co., 226 S. W. 853.]

It is substantially agreed by both parties that if plaintiff is entitled to the relief which it seeks, this is a proper proceeding to obtain it.

The judgment is reversed and the cause remanded with directions to the trial court to enter a decree adjudging the purported award null, void and of no effect.

All concur.