In the Matter of E. GERLI AND COMPANY, INC., Appellant, *v.* OSCAR HEINEMAN CORPORATION, Respondent.

(Argued February 15, 1932; decided March 3, 1932.)

*John F. Caskey* and *William T. Gossett* for appellant. The arbitrators were guilty of no misconduct or misbehavior; their conduct in ordering official tests of the unsold silk and in two of them making an examination of the silk upon the testing boards was proper. (*Matter of Robins Silk Mfg. Co.*, 224 App. Div. 83; 251 N. Y. 87; *Cobb* v. *Dolphin Mfg. Co.*, 108 N. Y. 463; *Dechant* v. *Globe & Rutgers Fire Ins. Co.*, 194 Wis. 579; *Small* v. *Trickey*, 43 Me. 507; *Straw* v. *Truesdale*, 59 N. H. 109; *Hall* v. *Norwalk Fire Ins. Co.*, 57 Conn. 105; *Bangor Sav. Bank* v. *Niagara Fire Ins. Co.*, 85 Me. 68; *Green Bay & Mississippi Canal Co.* v. *Kaukauna Gas, Elec. Lt. & Pr. Co.*, 157 Wis. 412; *Matter of Horowitz*, 221 App. Div. 567.) The inspection of the silk and the result of the test did not constitute the basis of the award but served only to confirm a decision already arrived at. (*Sweet* v. *Morrison*, 116 N. Y. 19; *Fudickar* v. *Guardian Mut. Life Ins. Co.*, 62 N. Y. 393; *People* v. *Gonzalez*, 35 N. Y. 49; *Burke* v. *Baker*, 188 N. Y. 561; *Post* v. *Brooklyn Heights R. R. Co.*, 195 N. Y. 62; *McGean* v. *Manhattan Ry. Co.*, 117 N. Y. 219.)

*Ralph M. Ketcham* for respondent. There was misconduct in the *ex parte* inspection by two arbitrators in the absence of the third. (Civ. Prac. Act, § 1453; *Bulson* v. *Lohnes*, 29 N. Y. 291; *Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388; *Smith* v. *Smith*, 28 Ill. 56; *Doherty* v. *Doherty*, 148 Mass. 367; *Jones* v. *Bishop*, 218 Ill. App. 318; *Little* v. *Newton*, 2 M. & G. 351.) There was misconduct in conducting the *ex parte* test. (*Berizzi Co.* v. *Krausz*, 239 N. Y. 315; *Matter of Brook & Delcomyn*, 16 C. B. [N. S.] 403.)

O'BRIEN, J. A large quantity of raw silk was sold by Oscar Heineman Corporation to E. Gerli & Co., Inc., which disposed of some of it to customers. Many of them rejected it for the reason, as they believed, that its quality did not conform with the required standard. A con-

troversy concerning it arose between Heineman and Gerli which was submitted to arbitration and resulted in a unanimous award by the three arbitrators in favor of Gerli. This award, holding that the quality was not equal to the standard exacted by the contract, is based upon tests submitted by the buyer, upon official tests made by order of the arbitrators and upon the personal inspection of some of the unsold silk by two of the arbitrators. That inspection was made by only two of the three arbitrators and the official test was ordered without the knowledge or the express consent of the unsuccessful party to the arbitration. For that reason the award was vacated at Special Term, the order vacating it was affirmed and questions have been certified to this court. We are asked to decide whether the arbitrators were guilty of misconduct or misbehavior and, if they were, was their misconduct such as to prejudice the rights of either party within the meaning of section 1457 of the Civil Practice Act.

The silk delivered to Gerli was described in the contract with Heineman as " 13/15 Japan Yellow Gunze Fil; 50 bales Shake Hands, 110 bales Shake Hands B, 290 bales Shake Hands A." Among the matters within the scope of the arbitration were the quality of the silk and the timeliness of the presentation of the buyer's claim against the seller. The only issue to which the certified questions are directed relates to the conduct of the arbitrators in ascertaining the quality of the silk. In the silk trade, material possessing a standard of ninety per cent or more in the evenness of the threads is recognized as the highest quality. Introduced at the hearing were reports of seriplane tests made by Japan Cotton Trading Company which had sold the silk to Heineman. These reports had been delivered by Heineman to Gerli and showed an average of ninety per cent in evenness. Other seriplane tests made at the request of eight or nine of Gerli's customers and showing only eighty to eighty-five

per cent in evenness were also in evidence. The seriplane test is the usual one for evenness of raw silk and is the official test of the Silk Association of America and of the National Raw Silk Exchange. After all these reports had been submitted to the arbitrators, the chairman inquired of Heineman's representative, then present, whether he insisted that a test at their order be made of the unsold silk then remaining in Gerli's possession. He replied that, in his opinion, the matter of quality was outside the scope of the arbitration. Three times he declined to answer the question more directly but rested upon his position that Heineman's defense was based entirely upon his interpretation of a rule of the Silk Association which, according to his contention, made void the notice of claim presented by Gerli. Slight, if any, effort to defend the quality of the silk appears in the record or in respondent's brief. Neither the arbitrators nor the buyer impute an intention to substitute an inferior article. All agree that the seller acted in good faith but the arbitrators have found that somewhere a mistake was made and that the buyer did not obtain the quality which the contract required. The three arbitrators, all of whom are experts in the silk trade, swear that in their opinion the tests submitted by Gerli at the hearing constitute sufficient evidence upon which to base a finding of inferiority. However, two of the arbitrators determined to verify the efficiency of those semi-official tests, as they describe them, and, therefore, after the hearing had been closed, they ordered official tests by the United States Testing Company. The result was the same. In order that they might be sure that the tests were accurately conducted, these two arbitrators were present when they were made. They examined the silk only in so far as they were present at the seriplane test in the laboratory. The third arbitrator was absent from the final tests but he read the official report of them and was assured by the two others that they had been efficiently conducted. In view of the

fact that Heineman's representative, when repeatedly pressed for an answer at the hearing, refused to signify objection to these tests other than that the ascertainment of the quality of the merchandise was not within the scope of the arbitration, the arbitrators cannot fairly be blamed for assuming his consent with that qualification. Apparently he went no further than to decline to waive the only defense, the invalidity of the notice of claim, upon which he relied.

Section 1457, subdivision 3, of the Civil Practice Act provides that the award must be vacated " where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Reference is made in this section to only two types of misconduct and, concededly, the arbitrators are free from both kinds. Inadvertent misbehavior, according to the strictest of all possible standards, perhaps there may have been, but have the rights of any party been prejudiced? Mere departure from formal technicalities without resulting injury is not sufficient cause under the statute to nullify an award. Where, as in *Berizzi Co.* v. *Krausz* (239 N. Y. 315), the evidence gathered *ex parte* by the arbitrator is the real basis of his decision, the prejudice is clear. Here, the final test may be regarded as merely confirmatory of the former tests upon which the arbitrators were warranted in basing their award and which they swear were sufficient in their opinion to establish the inferior quality of the merchandise. Conceding, as all do, the integrity of the arbitrators, the final official tests afforded to the seller the last opportunity by which the former tests, which were unfavorable to it, might have been disproved. Whatever advantage may have attached to these official tests lay with the seller. It had everything to gain and nothing to lose. We think, on the

whole, that according to the general range of the exceptions indicated in the *Berizzi* case, there was no misconduct or misbehavior within the meaning of section 1457 of the Civil Practice Act.

The order vacating the award should be reversed, and the motion to confirm granted, with costs in all courts, and the questions certified answered as follows: First question in the negative; second question not answered.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG and HUBBS, JJ., concur; LEHMAN, J., not sitting.

Ordered accordingly.