O & G/O'CONNELL JOINT VENTURE *v.* CHASE
FAMILY LIMITED PARTNERSHIP NO. 3 ET AL.

CHASE FAMILY LIMITED PARTNERSHIP NO. 3 ET AL.
*v.* O & G/O'CONNELL JOINT VENTURE
(12964)

PETERS, C. J., HEALEY, SANTANIELLO, DUPONT and CURRAN, JS.

Argued February 4—decision released April 14, 1987

*John C. Yavis, Jr.,* with whom was *Barry J. Waters,* for the appellant (plaintiff in the first case and defendant in the second case).

*Frank J. Silvestri, Jr.,* with whom was *Charles F. Corcoran III,* for the appellees (defendants in the first case and plaintiffs in the second case).

PETERS, C. J. The dispositive issue in this appeal is whether an arbitration panel engaged in misconduct warranting the vacation of an arbitration award under General Statutes § 52-418 (a) (3) when the panel failed to admit into evidence a single document proffered by the defendants after the completion of extensive hearings.[1] Pursuant to an arbitration clause in the construction contract between the parties, the plaintiff, O & G/O'Connell Joint Venture, submitted to the American Arbitration Association (AAA) a demand to arbitrate a dispute arising out of the defendants' allegedly wrongful termination of that contract. Upon the completion of arbitration hearings and the submission of post-hearing briefs, a three member arbitration panel

---

[1] General Statutes § 52-418 (a) provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

awarded the plaintiff the sum of $1,877,084 plus interest as damages, and the defendants the sum of $52,570 plus interest on a counterclaim. The defendants then filed an application in the Superior Court to vacate the award pursuant to General Statutes § 52-418, and the plaintiff filed an application for confirmation of the award pursuant to General Statutes § 52-417.[2] Concluding that the arbitration panel had engaged in misconduct in violation of General Statutes § 52-418 (a) (3), the trial court granted the defendants' application and denied the plaintiff's application.[3] The plaintiff has appealed from those judgments. We find error.

The parties stipulated to the following underlying facts. The plaintiff is a joint venture contractor comprised of O & G Industries, Inc. (O & G), and Daniel O'Connell's Sons, Inc. (O'Connell). The defendants, Chase Family Limited Partnership No. 3 and Olympia & York Hartford, Inc., are the owners of a multistory office building, known as One Commercial Plaza, in downtown Hartford. After negotiations that began in June, 1981, the parties entered into a written contract, dated March 8, 1983, but effective as of October 15, 1981, for the construction of that building. Subse-

[2] General Statutes § 52-417 provides: "APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[3] Upon the denial of its application for confirmation of the arbitration award and the granting of the defendants' application for vacation of the award, the plaintiff filed both a motion to open and modify that judgment and a motion to open and set aside that judgment. The trial court denied both motions. The case before us is a combined appeal from those judgments as well.

quently, on January 5, 1984, while the building was under construction, the defendants notified the plaintiff of the termination of its employment.

Pursuant to an arbitration agreement providing for the arbitration of disputes in accordance with the Construction Industry Arbitration Rules of the AAA,[4] the plaintiff submitted to the AAA on January 12, 1984,

---

[4] The arbitration clause in the construction contract provides:

"All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, except as provided in Subparagraph 2.2.11 with respect to the Architect's decision on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration arising out of or relating to the Contract Documents shall include, by consolidation, joinder or in any other manner, the Architect, his employees or consultants except by written consent containing a specific reference to the Owner-Contractor Agreement and signed by the Architect, the Owner, the Contractor and any other person sought to be joined. No arbitration shall include by consolidation, joinder or in any other manner, parties other than the Owner, the Contractor and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration. No person other than the Owner or Contractor shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein or with any person not named or described therein. The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by the parties to the Owner-Contractor Agreement shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

"Notice of the demand for arbitration shall be filed in writing with the other party to the Owner-Contractor Agreement and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subparagraph 2.2.12 where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen,

an unrestricted demand for arbitration.[5] The demand alleged, inter alia, wrongful termination of the plaintiff's employment, and requested two types of relief, a declaration that the construction contract remained in full force and effect and damages "in an amount as yet undetermined." In response, the defendants filed

and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

"Unless otherwise agreed in writing, the Contractor shall carry on the Work and maintain its progress during any arbitration proceedings, and the Owner shall continue to make payments to the Contractor in accordance with the Contract Documents."

[5] The plaintiff submitted the following demand for arbitration:

"AMERICAN ARBITRATION ASSOCIATION
CONSTRUCTION INDUSTRY ARBITRATION RULES
DEMAND FOR ARBITRATION

Date: January 12, 1984

To: (Name) Olympia & York-Hartford, Inc.
and Chase Family Limited Partnership No. 3.

(of party upon whom the Demand is made)

(Address) P.O. Box 3661

(City and State) Hartford, Connecticut 06103

Named claimant, a party to an arbitration agreement contained in a written contract, dated October 15, 1981 and signed March 8, 1983, as amended by an agreement dated March 8, 1983, providing for arbitration, under the Construction Industry Arbitration Rules, hereby demands arbitration thereunder.

NATURE OF DISPUTE:

Olympia & York-Hartford, Inc. and Chase Family Limited Partnership No. 3 have breached the contract as amended by (1) wrongfully attempting to terminate the employment of the Claimant and take possession of the construction site; (2) wrongfully refusing to grant Claimant access to the site; and (3) refusing to pay Claimant the amounts due for work performed under the contract.

CLAIM OR RELIEF SOUGHT: (amount, if any)

1. A declaration that the contract as amended is in full force and effect and that the Claimant's employment may not be terminated.

2. Damages in an amount as yet undetermined, plus interest and costs.

HEARING LOCALE REQUESTED: (city and state) Hartford, Connecticut.

You are hereby notified that copies of our Arbitration Agreement and of this Demand are being filed with the American Arbitration Association

an answer and an amended counterclaim. Between June, 1984 and June, 1985, a three member arbitration panel held fifty-two hearings, during which it heard extensive testimony and received voluminous documentary evidence. The panel rendered an award on October 10, 1985, providing the relief set forth above.

The defendants filed a timely application in the Superior Court to vacate the award of the arbitration panel. Among the issues that they raised was their claim that the plaintiff was not entitled to recover damages resulting from the lost business opportunity it had allegedly suffered in its capacity as a joint venturer.[6] General Statutes § 52-418. The defendants' application complained further that the arbitration panel was guilty of misconduct because it had declined to admit into evidence a copy of the joint venture agreement entered into by the two joint venturers, which the defendants

at its Hartford, Connecticut Regional Office, with the request that it commence the administration of the arbitration. Under Section 7 of the Arbitration Rules, you may file an answering statement within seven days after notice from the Administrator.

Signed: /s/ John C. Yavis, Jr.<br>(May be signed by attorney)

Address (to be used in connection with this case): 112 Wall Street, P.O. Box 907
City and State: Torrington, Connecticut 06790
Telephone: 489-9261
Name of Attorney: John C. Yavis, Jr., Murtha, Cullina, Richter and Pinney
Address: 101 Pearl Street, P.O. Box 3197
City and State: Hartford, Connecticut 06103
Telephone: 549-4500

To institute proceedings, please send three copies of this Demand and the arbitration agreement, with the filing fee, as provided in Section 47 of the Rules."

[6] In its post-hearing brief, dated July 25, 1985, the plaintiff asserted a claim for $3.5 million for the loss of business opportunity suffered by both the joint venture contractor and by the individual joint venturers. The plaintiff subsequently withdrew that claim with respect to the individual joint venturers, stating in its reply brief: "[T]he Contractor's $3.5 million claim for lost business opportunities does not include a claim by the individual joint venturers. The claim is strictly that the joint venture itself has been damaged."

had attempted to proffer after the completion of the arbitration hearings. Shortly thereafter, on November 29, 1985, the plaintiff filed an application for an order confirming the arbitration award. General Statutes § 52-417. The two applications were heard together in the trial court.

In the defendants' argument to the trial court concerning the applicability of § 52-418, they relied on a detailed history of the significance of the joint venture agreement and the circumstances surrounding their efforts to bring the agreement to the attention of the arbitration panel. This history is recited in the stipulation of facts.

The defendants explained that the joint venture agreement was significant because it negated the plaintiff's claim for lost opportunity damages which, according to the defendants, was not supported by evidence presented at the hearings and had been raised for the first time in the plaintiff's post-hearing brief to the arbitration panel. In that brief, the plaintiff asserted that the defendants' "wrongful and bad faith termination of the Contractor has effectively destroyed the Contractor's ability to bid projects as a joint venture." The plaintiff argued further that "[a]lthough the evidence is circumstantial, the Panel may rightfully—and conservatively—infer that *but for* the termination the Contractor would have been awarded at least two highrise jobs within the reasonable life-expectancy of the joint venture." (Emphasis in original.) Anticipating and responding to this claim in their brief, filed simultaneously with that of the plaintiff, the defendants asserted that "[t]he contractor has offered no convincing evidence that the termination will cause the O & G/O'Connell joint venture any economic harm . . . ."[7]

---

[7] In their initial post-hearing brief, the defendants devoted two pages to the argument that the evidence as to damages suffered by the joint venture was merely speculative.

In their subsequent reply brief to the arbitrators, the defendants again maintained that the plaintiff had no viable claim for loss of business opportunity, because "[t]he reality is that this joint venture between O & G and O'Connell was formed specifically and only to construct One Commercial Plaza."[8] The defendants, nonetheless, argued to the court that the joint venture agreement was essential to show that the joint venture had no life expectancy beyond the construction project at issue here and that lost opportunity damages were therefore inappropriate.

In the arbitration proceedings, the defendants had proffered the document in the following manner. After the scheduled hearings had been completed in June, 1985, and both parties had submitted their initial post-hearing briefs, the defendants' counsel sent to the AAA on August 14, 1985, a letter addressed to the arbitrators, requesting permission to introduce a copy of the joint venture agreement into evidence.[9] The defend-

---

[8] The joint venture agreement provides, in relevant part, that O & G Industries, Inc., and Daniel O'Connell's Sons, Inc., "constitute themselves as Joint Venturers for the purpose of performing and completing the Construction Contract, but not for any other purposes, it being expressly understood that this Agreement contemplates only the furnishing and the performance of the work, labor and materials necessary to the completion of the Construction Contract and that the parties are not making any permanent partnership agreement or permanent joint venture agreement to bid for or undertake any contract other than the Construction Contract . . . ."

[9] The letter sent by the defendants' counsel to the AAA on August 14, 1985, read as follows:

"August 14, 1985

Mssrs. John C. Heffernan, Richard W. LaMay and Daniel J. Tasillo
c/o American Arbitration Association
Two Hartford Square West
Hartford, Connecticut 06106

Re: 12 110 0033 84

O & G/O'Connell -and- Olympia & York, et al.

Gentlemen:

On behalf of the respondents Chase Family Limited Partnership No. 3 and Olympia & York Hartford, Inc., I am writing to request permission

ants' counsel did not, however, enclose with the letter a copy of the agreement itself. The letter explained that the document was being offered to negate the plaintiff's claim for lost opportunity damages, and that the defendants had not submitted it earlier because that claim had not been raised by the plaintiff at the hearings. Upon being telephonically advised by an AAA administrator of this request, the plaintiff's counsel informed the AAA by letter, dated August 16, 1985,

to supplement the record by submitting to the Panel as an exhibit a copy of the Joint Venture Agreement between O & G Industries, Inc., and Daniel O'Connell's Sons, Inc.

This request is prompted by the following statement at page 28 of the claimant's brief of July 25, 1985:

'Although the evidence is circumstantial, the Panel may rightfully—and conservatively—infer that *but for* the termination the Contractor would have been awarded at least two highrise jobs within the reasonable life-expectancy of the joint venture.' (Emphasis in original.)

This specific claim of two additional jobs within the 'reasonable life-expectancy of the joint venture' was not raised at the hearings either by argument or testimony. Had it been so raised, the respondents would have had the opportunity to offer the contractor's joint venture agreement—which is already marked as Exhibit XX in the delay arbitration—on the issue of what the 'reasonable life-expectancy of the joint venture' is and whether this joint venture could have been awarded two additional jobs during that life expectancy. Since the hearings have been left open to receive such additional evidence as the Panel may deem appropriate, and since the proffered document is highly relevant to this newly raised claim, the respondents submit that their request to supplement the record is reasonable and should be granted.

Thank you for your consideration.

Respectfully,
/s/Frank Silvestri
Frank J. Silvestri, Jr.

FJS/pc
cc: John Yavis, Jr., Esquire
Charles F. Corcoran, III, Esquire"

The defendants thereby followed the procedure set forth in Rule 40 of the Construction Industry Arbitration Rules, which provides in relevant part: "There shall be no communication between the parties and an arbitrator other than at oral hearings. Any other oral or written communications from the parties to the arbitrator shall be directed to the AAA for transmittal to the arbitrator."

that he had no objection to the admission of the agreement as part of the record. On August 19, 1985, the AAA sent each arbitrator a copy of the defendants' August 14 letter. The AAA did not send them a copy of the agreement itself, because it had never received a copy, and did not send to either the arbitrators or the defendants' counsel the August 16 letter from the plaintiff's counsel consenting to admission of the document.

At no time subsequent to his initial request did the defendants' counsel communicate with the arbitrators or the plaintiff's counsel to pursue his request for submission of the document. The arbitrators never responded to the request of the defendants' counsel and therefore never received a copy of the agreement. Subsequently, in a letter dated October 10, 1985, the arbitrators declared the hearings closed and enclosed therein a written arbitration award.

On the basis of these stipulated facts, the trial court concluded, in a written memorandum of decision, that the defendants' application to vacate should be granted, and the plaintiff's application for confirmation denied. The court found that $1,730,578.16 of the total sum of $1,877,084 awarded to the plaintiff represented compensation for "lost business opportunity." The court agreed with the defendants that the plaintiff had offered no evidence during the hearings to support its claim for lost opportunity damages and that the plaintiff had raised this claim for the first time in its posthearing briefs. Finding that the panel had wrongfully "refused to receive" the joint venture agreement, the court concluded that it was "guilty of misconduct" under General Statutes § 52-418 (a) (3) in "refusing to hear evidence pertinent and material to the controversy." It also determined that the panel had failed to comply with the "absolute mandate of Section 35 of the Construction Industry Arbitration Rules which

requires that prior to closing the hearings [it] 'specifically inquire' whether the parties have any additional evidence.''

In response to this adverse determination, the plaintiff filed with the trial court two timely motions to open and modify the judgment. The first of these motions sought to have the case remanded to the panel for a rehearing and for submission of the joint venture agreement. The second asked the trial court to set its judgment aside and to confirm the award.

The trial court filed a second memorandum of decision in explaining its denial of these motions. Clarifying its ruling under § 52-418 (a) (3), the court acknowledged that the arbitration panel's failure to receive the contested document had resulted from a "mix-up" in communications between the parties and the arbitrators. Accordingly, the basis for the statutory violation was not that the panel had acted in "bad faith," since there had been "misconduct" only in the technical sense, but rather "that there was something inherently unfair in the hearing . . . ." The court further determined that under the time constraints set forth in General Statutes §§ 52-416 (a) and 52-418 (b), and in Rule 36 of the Construction Industry Arbitration Rules, it had no authority to reopen the hearings after October 10, 1985, the date on which the panel had issued its award.[10]

---

[10] General Statutes § 52-416 (a) provides: "TIME WITHIN WHICH AWARD SHALL BE RENDERED. NOTICE. (a) If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing."

General Statutes § 52-418 (b) provides: "If an award is vacated and the

In this appeal from the trial court's judgments, the plaintiff claims that the court erred in: (1) finding the arbitration panel guilty of misconduct in refusing to receive the joint venture agreement into evidence; (2) reviewing the sufficiency of the evidence presented to the panel; (3) declining to remand the case to the panel for consideration of the joint venture agreement; and (4) refusing to admit the transcripts and exhibits from the arbitration hearings into evidence. Because we agree with the plaintiff's first two claims and conclude that the arbitration award should be confirmed, we need not address the remaining issues that the plaintiff has raised.

## I

The plaintiff's first claim of error is that the trial court erred in finding the arbitration panel guilty of misconduct under § 52-418 in refusing to admit into evidence the joint venture agreement proffered by the defendants. Pointing to the unusual circumstances surrounding the defendants' proffer, the plaintiff claims that the panel never in fact refused to receive the document, and that even if it did, the defendants were in no way prejudiced by that ruling because the agreement was merely cumulative evidence which would not have affected the award rendered by the arbitrators. We agree.

time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."

Rule 36 of the Construction Industry Arbitration Rules provides: "REOPENING OF HEARINGS

"The hearings may be reopened by the arbitrators at will, or upon application of a party at any time before the award is made. If the reopening of the hearing would prevent the making of the award within the specific time agreed upon by the parties in the contract out of which the controversy has arisen, the matter may not be reopened, unless the parties agree upon the extension of such time limit. When no specific date is fixed in the contract, the arbitrator may reopen the hearings, and the arbitrator shall have thirty days from the closing of the reopened hearings within which to make an award."

Before we undertake our analysis of whether the circumstances surrounding the exclusion of the agreement support a finding of arbitral misconduct, it is useful to recall the principles that guide our review of private consensual arbitration. This court has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes "intended to avoid the formalities, delay, expense and vexation of ordinary litigation." *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 107, 438 A.2d 1171 (1981); *Administrative & Residual Employees Union* v. *State,* 200 Conn. 345, 349, 510 A.2d 989 (1986). When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 585, 519 A.2d 1 (1986); *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 583, 440 A.2d 774 (1981); *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 64, 357 A.2d 466 (1975). Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. *Bic Pen Corporation* v. *Local No. 134,* supra, 584; *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* supra, 62; *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* 164 Conn. 472, 476–77, 325 A.2d 274 (1973). Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. *Administrative & Residual Employees Union* v. *State,* supra; *Schwarzschild* v. *Martin,* 191 Conn. 316, 327, 464 A.2d 774 (1983); *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* 174 Conn. 583, 590, 392 A.2d 461 (1978). The party challenging the award bears the burden of producing

evidence sufficient to invalidate or avoid it, and only upon a showing that it "falls within the proscriptions of § 52-418 of the General Statutes, or procedurally violates the parties' agreement" will the determination of an arbitrator be subject to judicial inquiry. *Costello Construction Corporation* v. *Teamsters Local 559,* 167 Conn. 315, 318, 355 A.2d 279 (1974); *Stratford* v. *Local 134, IFPTE,* supra; *Administrative & Residual Employees Union* v. *State,* supra; *Schwarzschild* v. *Martin,* supra; *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 682, 427 A.2d 859 (1980); *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* supra; *Von Langendorff* v. *Riordan,* 147 Conn. 524, 527, 163 A.2d 100 (1960).

In their application for vacation of the award, the defendants in this case relied principally upon § 52-418 (a) (3), which provides that the court "shall make an order vacating the award . . . if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced." Specifically, the defendants alleged that the panel engaged in statutory misconduct by acting in "neglectful disregard" of their request to submit the joint venture agreement into evidence, thereby blocking their fundamental right to be heard. See *Cofinco, Inc.* v. *Bakrie & Bros., N. V.,* 395 F. Sup. 613, 615 (S.D.N.Y. 1975).

The concept of arbitral "misconduct" does not lend itself to a precise definition but is, instead, best illustrated by example. See generally A. Rothstein, "Vacation of Awards for Fraud, Bias, Misconduct and Partiality," 10 Vand. L. Rev. 813 (1957). Among the actions that have been found to constitute such misconduct on the part of an arbitrator as would warrant vacating an arbitration award are the following: participation in ex

parte communications with a party or a witness, without the knowledge or consent of the other party; *Whitehair* v. *Kansas Flour Mills Corporation,* 127 Kan. 877, 879, 275 P. 190 (1929);[11] *Matter of Goldfinger* v. *Lisker,* 68 N.Y.2d 225, 232, 500 N.E.2d 857, 508 N.Y.S.2d 159 (1986); ex parte receipt of evidence as to a material fact, without notice to a party; *Hewitt* v. *Village of Reed City,* 124 Mich. 6, 8, 82 N.W. 616 (1900); *Reisman* v. *Ranoel Realty Co.,* 224 Pa. Super. 220, 224, 303 A.2d 511 (1973); holding hearings or conducting deliberations in the absence of a member of an arbitration panel, or rendering an award without consulting a panel member; see *Continental Bank Supply Co.* v. *International Brotherhood of Bookbinders,* 239 Mo. App. 1247, 1258, 201 S.W.2d 531 (1947); undertaking an independent investigation into a material matter after the close of hearings and without notice to the parties; *Matter of Goldfinger* v. *Lisker,* supra; and accepting gifts or other hospitality from a party during the proceedings. See *Robinson* v. *Shanks,* 118 Ind. 125, 130, 20 N.E. 713 (1889). An award may likewise be set aside on the basis of procedural error by an arbitration panel if, for instance, the panel arbitrarily denies a reasonable request for postponement of a hearing; *Fairchild & Co.* v. *Richmond, F. & P. R. Co.,* 516 F. Sup. 1305, 1313 (D.D.C. 1981); see *Two Sisters, Inc.* v. *Gosch & Co.,* 171 Conn. 493, 499 n.4, 370 A.2d 1020 (1976); or commits an egregious evidentiary error, such as refusing to hear material evidence or precluding a party's efforts to develop a full record. *Bell Aerospace Co.* v. *Local 516,* 500 F.2d 921, 923 (2d Cir. 1974); *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir.), cert. denied, 393 U.S. 954, 89 S.

---

[11] We note that, in general, arbitrators are permitted to consult independently with third party sources when necessary to confirm technical information presented in a proceeding. *Matter of Goldfinger* v. *Lisker,* 68 N.Y.2d 225, 232, 500 N.E.2d 857, 508 N.Y.S.2d 159 (1986); *Matter of Gerli & Co.* v. *Heineman Corporation,* 258 N.Y. 484, 488, 180 N.E. 243 (1932).

Ct. 378, 21 L. Ed. 2d 365 (1968); *Fairchild & Co.* v. *Richmond, F. & P. R. Co.,* supra, 1314; *Cobec Brazilian Trading & Warehousing Corporation* v. *Isbrandtsen,* 524 F. Sup. 7, 10 (S.D.N.Y. 1980). Though not exhaustive, these examples of arbitral misconduct delineate the broad contours of conduct that is unacceptable and prohibited under § 52-418 (a) (3). The presumptive validity of consensual arbitration awards depends upon the underlying integrity of the arbitration process. When that integrity is tainted either by actual impropriety or the appearance of impropriety, the arbitration award cannot be permitted to stand. See *Commonwealth Coatings Corporation* v. *Continental Casualty Co.,* 393 U.S. 145, 147–48, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968), reh. denied, 393 U.S. 1112, 89 S. Ct. 848, 21 L. Ed. 2d 812 (1969).

In the present case, we must determine whether, by not admitting into evidence the joint venture agreement between O & G and O'Connell, the arbitration panel committed an egregious evidentiary error requiring the award to be vacated. We note, at the outset, that arbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which "relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision." *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* supra, 477; *Bridgeport* v. *Bridgeport Police Local 1159,* supra, 106. Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. *Fairchild & Co.* v. *Richmond, F. & P. R. Co.,* supra; *Catz American Co.* v. *Pearl Grange Fruit Exchange, Inc.,* 292 F. Sup. 549, 553 (S.D.N.Y. 1968). This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceed-

ing designed, in part, to avoid the complexities of litigation. Moreover, arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules.

In light of these well settled principles governing evidentiary issues in arbitration proceedings, we decline to interpret § 52-418 (a) (3) as mandating that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct. See *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.,* supra; *Fairchild & Co.* v. *Richmond, F. & P. R. Co.,* supra. To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.,* supra; *Capital District Chapter* v. *International Brotherhood of Painters,* 581 F. Sup. 840, 845 n.9 (N.D.N.Y. 1983), aff'd in part, rev'd and remanded in part, vacated in part, 743 F.2d 142 (2d Cir. 1984); *Fairchild & Co.* v. *Richmond, F. & P. R. Co.,* supra. Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel. *Grahams Service, Inc.* v. *Teamsters Local 975,* 700 F.2d 420, 422 (8th Cir. 1982); *Bell Aerospace Co.* v. *Local 516,* supra, 923; *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.,* supra; *Fairchild & Co.* v. *Richmond, R. & P. R. Co.,* supra, 1315; *Cobec Brazilian Trading & Warehousing Corporation* v. *Isbrandtsen,* supra, 10; *Reichman* v. *Creative Real Estate Consultants, Inc.,* 476 F. Sup. 1276, 1285 (S.D.N.Y. 1979); *Cofinco, Inc.* v.

*Bakrie & Bros., N. V.,* supra, 615;[12] *Good* v. *Kaiser Foundation Hospital,* 152 Cal. App. 3d 819, 823, 199 Cal. Rptr. 581 (1984); *Dahn* v. *Luchs,* 92 App. Div. 2d 537, 538, 459 N.Y.S.2d 101 (1983); *Reisman* v. *Ranoel Realty Co.,* supra, 224.

In considering whether in the present case the panel's exclusion of the joint venture agreement was an egregious evidentiary error, we must examine the entire factual background of the defendants' unsuccessful effort to have that document placed into evidence. In pursuing this claim based upon the shortcomings of the arbitrators, the defendants downplay the critical tactical errors they themselves made during the course of the proceedings. These tactical errors relate to the timing of their evidentiary request, and the manner in which it was implemented.

With respect to timing, the defendants obtained a copy of the joint venture agreement no later than February, 1984, and perhaps even earlier. Nevertheless, they did not attempt to introduce the agreement until August, 1985, two months after the hearings had been completed. Although the defendants insist that they were surprised by the plaintiff's claim for lost opportunity damages, the defendants clearly anticipated that claim to some extent in that they addressed it in their own post-hearing briefs. We therefore conclude that the defendants could have foreseen the relevance of the document and could reasonably be expected to have

---

[12] Federal case law is instructive on this issue because General Statutes § 52-418 (a) (3) essentially tracks the language of the federal statute governing arbitral misconduct. Title 9 of the United States Code, § 10, provides in relevant part: "[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . . (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."

introduced it prior to the completion of the hearings in June, 1985. In light of the fact that, with one exception, the panel admitted all of the 278 exhibits offered by the defendants, as well as 184 exhibits offered by the plaintiff, the panel would likely have admitted the agreement had it been offered in a timely fashion.

The more significant error made by the defendants was their failure to perfect their proffer of the agreement. On June 17, 1985, the final day of the scheduled hearings, the panel expressly declined to close the hearings, recognizing the possibility that it might require further evidence before rendering its award. The defendants initially followed the proper procedure, as described above, in seeking to introduce the agreement. Faced with the panel's failure to respond to its written request, however, the burden was on the defendants to press for an evidentiary ruling regarding the admissibility of the agreement, which they never sought. See *State* v. *George,* 194 Conn. 361, 372, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *Williams,* 169 Conn. 322, 333, 363 A.2d 72 (1975). Instead, the defendants awaited the arbitration panel's award on the merits before pursuing their evidentiary claim in the Superior Court.[13] On this record, we agree with the plaintiff that the panel never refused to receive into evidence the agreement offered by the defendants. Absent such a refusal, the defendants have not established the factual predicate for arbitral misconduct.

Furthermore, we note that even if, on some theory, we were to overlook the defendants' shared responsibility for the unavailability of the joint venture agreement in the arbitration, the defendants have not proven

---

[13] Furthermore, under Rule 36 of the Construction Industry Arbitration Rules, the defendants could have applied to have the hearings reopened at any time before the award was issued on October 10, 1985.

that they were denied a full and fair hearing by virtue of its exclusion. See *Cofinco, Inc.* v. *Bakrie & Bros., N. V.,* supra; *Pfeiffer* v. *Merrill Lynch Pierce Fenner & Smith, Inc.,* 184 N.Y.L.J. No. 121, p. 10 (Sup. Ct. N.Y. Cty. 1980). Although the joint venture agreement was relevant, its precise text was not as crucial as the defendants allege. First, the defendants, in their post-hearing briefs to the panel, had two opportunites to respond to the plaintiff's claim for lost opportunity damages, and addressed that claim on both occasions. Second, the plaintiff expressly conceded, in its post-hearing reply brief, that the joint venture was created solely for the construction of One Commercial Plaza and insisted that it was nevertheless entitled to recover damages for lost business opportunities.[14] Given this express acknowledgment of the contents of the agreement, the panel was well aware of its relevant provisions and their significance, even though the document was never formally admitted into evidence. The document was, in these circumstances, merely cumulative evidence which would not have provided any new information relating to the plaintiff's damage claim for lost business opportunity. Third, and finally, we note that the arbitration panel in this case was extremely professional and thorough in conducting the hearings, and in no way denied the parties an opportunity to develop a full record. The panel patiently heard extensive testimony, resulting in over 7000 pages of transcript, admitted 462 exhibits, over one half of which had been introduced by the defendants, traveled to Florida to take testimony from a recalcitrant witness, and per-

---

[14] The plaintiff asserted in its reply brief: "The joint venture agreement, offered into evidence by [the defendants] after the close of hearings . . . does not preclude a finding by the Panel that the Contractor would have been awarded at least two highrise jobs within its reasonable life expectancy. While the joint venture agreement specifically pertained to One Commercial Plaza and did not constitute a 'permanent partnership agreement or permanent joint venture agreement,' it was anticipated that, if successful, the individual joint venturers would collaborate on future projects."

sonally visited the construction site of One Commercial Plaza. We therefore conclude that, on the record before us, there is no basis for vacating the arbitration award on the ground of arbitral misconduct.[15] The trial court was in error in ruling to the contrary.

## II

In seeking to have the award vacated, the defendants relied secondarily upon General Statutes § 52-418 (a) (4), claiming that the arbitrators "exceeded their powers," and upon § 52-418 (a) (1), alleging that the plaintiff procured the award by "undue means." These claims warrant only brief discussion.

"In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission." *Bic Pen Corporation* v. *Local No. 134,* supra, 584; *New Britain* v. *Connecticut State Board of Mediation & Arbitration,* 178 Conn. 557, 562, 424 A.2d 263 (1979); *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323 (1977). Unless the submission provides otherwise, an arbitrator has authority to decide factual and legal questions,

---

[15] The trial court also ruled that the panel had failed to comply with the mandate of Rule 35 of the Construction Industry Arbitration Rules, which provides that prior to closing the hearings, "[t]he arbitrator shall specifically inquire of the parties whether they have any further proofs to offer or witnesses to be heard." Although the panel in this case did not expressly make such an inquiry, one of the arbitrators stated at the final scheduled hearing on June 17, 1985: "One of the reasons I don't want to close the hearing is it's conceivable that there may be some question we have which may require some small amount of further evidence." In leaving the hearings open for the submission of additional evidence, the panel thereby substantially complied with Rule 35. Moreover, under Rule 38, the defendants are deemed to have waived any objection to the panel's failure to comply strictly with that rule. Rule 38 provides: "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection thereto in writing, shall be deemed to have waived the right to object." The defendants filed no such written objection.

and courts will not review the evidence, or, where the submission is unrestricted, the arbitrator's determination of legal questions. *Bic Pen Corporation* v. *Local No. 134,* supra; *Milford Employees Assn.* v. *Milford,* supra, 683; *Waterbury* v. *Waterbury Police Union,* 176 Conn. 401, 404, 407 A.2d 1013 (1979); *Meyers* v. *Lakeridge Development Co.,* 173 Conn. 133, 135, 376 A.2d 1105 (1977). In this case, because neither the plaintiff's demand for arbitration nor the defendants' answer contained any conditional language restricting the powers of the arbitrators, the submission was unrestricted. See *Bic Pen Corporation* v. *Local No. 134,* supra, 584–85; *Bridgeport* v. *Bridgeport Police Local 1159,* supra, 107; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 594–95, 96 A.2d 209 (1953). Since the award conforms to the submission, the defendants' claim that the arbitrators exceeded their powers is without merit.

In fact, the defendants' assertion that the arbitrators exceeded their powers is but a thinly veiled attempt to have the award vacated on the ground that it was not supported by any evidence presented at the hearings. Although the trial court agreed with the defendants' argument that there was insufficient evidence to support the plaintiff's claim for lost opportunity damages, the court had no authority to make that determination. We have stated frequently a point that bears reiteration; because consensual arbitration is a contractual remedy and the powers of the arbitrator are determined by the parties themselves, judicial review of such arbitration awards is limited in scope. *Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A.2d 685 (1983); *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Bic Pen Corporation* v. *Local No. 14,* supra, 583; *Waterbury* v. *Waterbury Police Union,* supra, 403. As we noted earlier, a court is bound by the award of the arbitrator

unless it "falls within the proscriptions of § 52-418 of the General Statutes, or procedurally violates the parties' agreement." *Costello Construction Corporation* v. *Teamsters Local 559,* supra, 318; *Milford Employees Assn.* v. *Milford,* supra, 682. Thus, the trial court's review of an arbitral award is a far cry from a trial de novo. Compare, e.g., General Statutes § 12-237; *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 303, 397 A.2d 1367 (1978); *Yale University* v. *New Haven,* 169 Conn. 454, 465, 363 A.2d 1108 (1975). Indeed, judicial review of arbitration awards is even more restrictive than judicial review of a decision of an administrative agency under the Uniform Administrative Procedure Act, which has been interpreted as allowing a court to "do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported . . . by substantial evidence." *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983); General Statutes § 4-183 (g); *Norwich* v. *Norwich Fire Fighters,* 173 Conn. 210, 214, 377 A.2d 290 (1977). Only upon a showing of egregious error, which this record does not substantiate, does a court have authority to review the record to determine the sufficiency of the evidence in support of an arbitration award.

Finally, the defendants contend that the plaintiff procured the arbitration award by undue means, requiring that it be vacated under § 52-418 (a) (1). The thrust of this argument is that the plaintiff manipulated the proceedings by waiting until it submitted its post-hearing brief to raise its claim for lost opportunity damages. According to the defendants, since the hearings had been completed by that time and no further testimony could be presented, they were deprived of an adequate opportunity to rebut that claim. We note, however, that the plaintiff was not required to raise this claim formally prior to the submission of post-

hearing briefs and therefore followed the proper procedure for presenting its claims to the panel. More important, the plaintiff clearly presented at the hearings some evidence in support of this claim, as demonstrated by the defendants' own discussion of that issue in both of their post-hearing briefs. The defendants thus had sufficient notice of that claim, as well as a full opportunity to address it. We conclude that there is no evidence whatsoever that the plaintiff procured the award by undue means.

There is error, the judgment of the trial court is set aside and the case is remanded with direction to render judgment for the plaintiff on its motion to confirm the arbitration award.

In this opinion the other justices concurred.