[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
As its ruling in this case, the court adopts its oral ruling of July 28, 1993, as corrected, and supplements it by the following:
Although not alleged in any count as a ground to vacate the arbitration award, the applicants did introduce proof that Mr. McKenna may have violated the terms of Conn. Gen. Stat. 52-418(a)(4) by not submitting to the umpire, Mr. Field, and the other appraiser, Mr. Kronberg, an estimate personally prepared by him separately stating actual cash value and loss as to each item. Instead, Mr. McKenna submitted an estimate that separately stated actual cash value and loss as to each item that had been prepared CT Page 7846 by First General Services (exhibit D, tab 30). The format of the First General estimate is virtually identical to that used by Mr. Kronberg, applicants' designated appraiser.
The Court does not read the insurance contract, exhibit A, or the applicable statute, Conn. Gen. Stat. 38a-307, as requiring Mr. McKenna to prepare his own estimate. What was required, and what was done here, was a "determination" of the amount of loss, item by item, and a submission of the differences to the arbitrator.
Any challenge to an award under 52-418 (a)(4) is limited to a comparison of the award with the submission. See. e.g., Wolf v. Gould, 10 Conn. App. 292, 296 (1987) and cases cited therein. In this case, the award clearly conforms to the submission which covered the fire loss on the premises only. Further, it was a "mutual, final and definite award" made and agreed upon by Mr. Field, the umpire, and Mr. McKenna. This satisfies the latter portion of 52-418 (a)(4). Thus, this claim must also fail.
Finally, a claim was made, apparently under 52-418 (a)(3). that the umpire did not adequately consider Mr. Kronberg's protests. However, Mr. Field, the umpire, testified that both Mr. Kronberg and Mr. McKenna said many things, that he listened to both of them, and that he gave weight to what he considered relevant in resolving the dispute between the arbitrators. The applicants have not proved that they were "in fact deprived of a full and fair hearing before the arbitration panel, [citations omitted]," O G/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3.203 Conn. 133, 149 (1987), which is required to vacate an award under 52-418 (a)(3).
For the foregoing reasons and the reasons stated on the record on July 28, 1993 and incorporated herein, the application to vacate the arbitration award is denied and judgment shall enter for the defendant confirming the award.
LINDA K. LAGER, JUDGE
(Judge's ruling only.)
APPEARANCES:
John Biller, Esq. and Scott DeLaura, Esq. for the Plaintiffs: CT Page 7847
Daniel F. Sullivan, Esq. for the Defendant.
Sheila Demetro Court Recording Monitor
LAGER, JUDGE
THE COURT: The Court is prepared to rule from the bench.
This is an action brought to vacate an arbitration award. The Court by an earlier ruling today has allowed the applicants to proceed by way of an amended complaint in the [dated] July 12, 1993 and filed on July 15, 1993. The amended complaint seeks to vacate a certain appraisal award between the plaintiffs and Allstate Insurance and sounds in three counts. The first count alleges that the appraisal award was obtained through mistake or error and that the plaintiffs have been damaged thereto. The second count alleges that the appraisal award was procured through evident partiality and the plaintiffs have been damaged thereto. And the third count alleges that the appraisal award was procured through fraud and or undue means and the plaintiffs have been damaged thereto.
Evidence has been introduced in this hearing in the form of the testimony of the two appraisers and the umpire who arbitrated this particular dispute. The appraisal was conducted pursuant to the terms of the insurance policy issued by the defendant to the plaintiff which is Plaintiff's Exhibit A. In relevant part that policy provided that if the insured and the insurer failed to agree on the amount of loss, either party may make a written demand for appraisal. Upon such demand each party must select a competent and disinterested appraiser. The appraisers will select a competent and impartial umpire. The appraisers will then determine the amount of loss stating separately the actual cash value and amount of loss to each item. If the appraisers cannot agree, they will submit their differences to the umpire. A written CT Page 7848 award by any two will determine the amount of the loss.
This matter was submitted to appraisal as evidenced by Plaintiff's Exhibit B-1 on March 23, 1992. The demand for the appraisal was made by the applicants, Anthony and Cynthia Calandro. The submission was unrestricted in scope, it designated for the parties of the first part, Anthony and Cynthia Calandro, David Kronberg as their appraiser, and it designated on the part of the insurance company Richard McKenna as appraiser. The purpose of this appraisal was to estimate and appraise the loss of and to said property meaning 232 Short Beach Road, East Haven, Connecticut by fire occurring on November 18, 1991.
The agreement for submission to appraiser, Plaintiff's B-1, further indicates that the replacement cost to be ascertained is the actual cost of replacing said property at the place of and immediately prior to the occurrence of said fire. The replacement cost damages to be ascertained are the actual costs of replacing said damaged property at the place of and immediately prior to the occurrence of said fire. The sound value to be ascertained is the actual cash value of said property at the place of and immediately prior to the occurrence of said fire. The sound value and loss to be ascertained is the direct loss by said fire. The sound value in loss and damage shall not exceed what it would have cost the first party to repair or replace the said damage or destroyed property at the time of the occurrence of said fire with the material of like kind and quality less depreciation where applicable however how so ever caused occurring before said fire.
The document is signed by Mr. Anthony Calandro and Ms. Cynthia Calandro and I cannot make out the dates. It looks like it was November 11, 1992; is that correct? CT Page 7849
MR. SULLIVAN: I believe that is correct, your Honor. I don't have it in front of me, but —
THE COURT: However it indicates in typing March 23, 1992. In any event, it is quite clear that the request for submission of this matter for appraisal was made by the demand of the Calandros.
Ordinarily upon review of unrestricted submission such as the one in this case, the Court's role is extremely narrow. As was stated in New Haven versus AFSCME, A.F.S.C.M.E., Council 15 Local 530, 208 Connecticut 411 at page 414, and I quote, "Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." This is a long standing scope of review that has appeared in many cases of our Supreme Court and our Appellate Court.
Under certain limited circumstances, however, if an applicant can demonstrate that the arbitration proceedings were in violation of section 52-418(a) of the general statutes, an appraisal award or an arbitration award then must be set aside by the Court. A heavy burden is placed upon the applicant to establish that one of the provisions of section 52-418 (a) have been violated.
As I stated before, the first count of the Application to Vacate the Appraisal Award has as its grounds that the award was obtained through mistake or error. Mistake or error is not a ground upon which the Court can set aside an application — excuse me, an arbitration award, and that is again set forth in the New Haven versus AFSCME case that I cited to you as well as other authorities. CT Page 7850
When parties such as the parties in this case, and in this instance on the application of the Calandro's, agreed to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or of fact. Therefore, the applicants cannot prevail upon the allegations contained in the first count of the application to vacate the appraisal award.
The second count alleges that the appraisal award was procured through evident partiality. The thrust of this claim appears to be that Mr. McKenna having spent his entire professional career providing services to the insurance industry was ab initio not impartial or ab initio partial to the insurance company in this case.
In this Court's view, the plaintiff's position is overly broad. The plaintiffs have cited no authority within the State of Connecticut for the proposition that simply because an individual as a result of his or her employment is connected to a particular aspect of the subject of arbitration, that is, as in this instance where Mr. McKenna is employed in a line of business where he does his work principally for insurance companies and self-insureds, that, in and of itself, indicates that he approached the arbitration proceeding in this case with any preconceived notions or with any inability to be fair or impartial. At least one of the cases to which the plaintiffs cite from outside of the jurisdiction involved an arbitrator who had actually made previous assessments of value for the particular property which was the subject of the appraisal or arbitration proceeding and who did not reveal that fact prior to being appointed as an appraiser. And I believe that is the case of Shipperern Block (phonetic) versus Carson Perry that has been cited by the plaintiffs. Those circumstances don't exist here. Clearly, in order to have effective arbitration as a matter of public policy, individuals who have connections with the subject matters of the arbitration or appraisal because CT Page 7851 they have worked for one side or another must be called upon to participate in the arbitration process. If the Court ruled otherwise, it would be virtually impossible for parties to arbitrate their disputes because it would be virtually impossible to find individuals who work both sides of the fence, it is just not a practical reality in this world. So the Court will not find that Mr. McKenna, based on his past employment demonstrated any evident impartiality, excuse me, evident partiality.
The test for determining evident partiality is whether or not a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, evident partiality exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties. This is also a quote from Local 530 AFSCME Council 15 versus New Haven, a decision at9 Connecticut Appellate 260 at 274.
The burden of proving bias or evident partiality pursuant to section 52-418 (a)(2) rests on the party making such a claim and requires more than a showing of an "appearance of bias" and this is from Vincent Builders Incorporated versus American Application Systems Incorporated16 Connecticut Appellate 486 at 495. In this Court's view, this is an extremely difficult burden for an applicant to satisfy.
The McNeice case represents one of the most extreme examples that the Court can think of in which it is clear that the arbitrator was not partial due to circumstances outside of the scope and substance of the proceedings. In this instance notwithstanding Mr. McKenna's response to Mr. DeLaura's question that he demonstrated evident and clear partiality to Allstate, that was a response which Mr. DeLaura did not allow Mr. McKenna to qualify. Certainly, it was Mr. DeLaura's right pursuant to cross examination to not allow an explanation to that response. CT Page 7852 Mr. McKenna answered it truthfully. But in qualifying that upon, I should say, it was Mr. DeLaura's right to not pursue it in direct examination of someone he assumed to be a hostile witness, but in cross examination I believe that Mr. McKenna sufficiently qualified that response and indicated that only after he had conducted a through investigation and reviewed all of the estimates and records that he concluded that the first general estimate was the correct determination, and since that estimate had been originally retained by Allstate, he then viewed himself as evidentially partial to Allstate in his conclusions or his determinations. It is quite clear to the Court that Mr. McKenna embarked upon this arbitration without any preconceived notions or any preconceived ideas with respect to what his conclusions were going to be, that he undertook his obligation as an appraiser fairly and impartially, and that he in fact conducted an extremely thorough investigation. There is simply no support for the argument that just because he provided more than the other appraiser, that is evidence of his evident partiality or the fact that he came to the case in some way or to his task as appraiser in some way already biased towards one side or developed that biased before he finished a complete investigation. The task of an appraiser is to reach certain conclusions, and if those conclusions support one side or another, that in and of itself is not enough for the Court to say that an appraiser has been biased or evidently partial.
Mr. McKenna testified that during the process of determining the loss he was impartial, he considered all the information that was relevant to the loss, he was independent, he kept an open mind, he was objective, and he was fair. And the Court cannot find under the facts adduced in this case any evidence of either the appearance of partiality or the fact of partiality sufficient to rise to the level that would require the Court to vacate the arbitration award pursuant to the provisions of 52-418 (a)(2) CT Page 7853
It is clear to the Court that the circumstances surrounding this appraisal were the kind of circumstances that lead to a number of disputes. Actually, according to the testimony of Mr. Field, practically everything was in dispute. Just because the parties disagree however, that does not indicate that there was any bias or lack of impartiality in the appraisal process. It is clear that many, many things occurred in the course of the appraisal process that have not been introduced into evidence before this Court, as they should not be according to the standard of review. Mr. McKenna, Mr. Kronberg and Mr. Field all testified of numerous occasions of walking through the subject premises, numerous discussions, reviewing the various items on the subject premises, concerns that arose because the subject premises had been damaged and had been in a damaged condition for a long period of time and because the subject premises had sustained water damage in addition to the fire damage. The Court found all three witnesses to be credible, and the Court is not going to participate in any kind of a judgment call on which of these individuals made the correct decision with respect to value because that is not the Court's job in this kind of a proceeding.
Mr. Field performed his function properly and appropriately as an umpire in assessing this award.
The allegations in the third count suggest that Mr. Field's award in some way, shape or form was the subject of fraud or undue influence or undue means. The elements to satisfy fraud as required under the cases in this state have simply not been established though the evidence. There is absolutely no evidence of fraud perpetrated by anyone on Mr. Field and no evidence of fraud on the part of Mr. Field in his determination of the award.
The plaintiffs appeared to put great weight CT Page 7854 on the fact that certain documents are contrary to each other. I believe they are Plaintiff's E and Plaintiff's G. To the extent that those documents were at all relevant to Mr. Field's ultimate appraisal, the testimony before the Court that is unrefuted is that no one had any reason to believe either of those documents were false. In addition, the Court finds absolutely that neither of those documents contributed to the appraisal award in this case. I don't think that's my function, to tell you the truth, in this proceeding, but I think that's an important finding because of the suggestion that the, not the suggestion, but the allegation that the award was procured by fraud. Likewise, the submission of those documents to the umpire by Mr. McKenna does not reflect any, again, evident impartiality on his part.
If in fact as has been indicated, and the Court has not carefully reviewed E and G, they are contrary to each other, certainly Mr. McKenna testified that he gave no credibility to either document, Mr. Field testified that what he principally relied on were the estimates, the various estimates that were submitted by Mr. Kronberg and Mr. McKenna and the Court's conclusion is that E and G along with most of what was submitted in D, in fact, had absolutely no bearing or influence whatsoever in any way, shape or form on the award that was concluded upon by Mr. Field.
Mr. Field, as counsel are well aware, was entitled to rely on almost anything that he thought he properly thought he could rely upon in the way of evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property in order to determine the actual cash value at the time of the loss. In this case Mr. Field did precisely what is contemplated by the role of the umpire by resolving the dispute that existed between the two appraisers. Again, if Mr. Field committed any errors of law or fact in that process, those CT Page 7855 cannot be reviewed by the Court. This award is in accordance with the powers conferred by the unrestricted submission.
The plaintiff's have failed to meet their burden of proof to vacate the award under any of the provisions of section 52-418, and therefore the application to vacate the award is denied.
THE COURT: Anything further, counsel?
MR. DELAURA: Nothing.
CERTIFICATION
I, Sheila Demetro, hereby certify that the foregoing is a true and accurate transcript of the above-entitled cause transcribed by me, Sheila Demetro, before the Honorable Linda K. Lager, Judge of the Superior Court, New Haven, Connecticut, on the 28th day of July 1993.
Dated this 13th day of August, 1993.
Sheila Demetro, Court Recording Monitor