[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S APPLICATION TO VACATE AN ARBITRATION AWARD AND DEFENDANT'S APPLICATION TO CONFIRM AWARD
The plaintiff brings this application to vacate an arbitrator's award pursuant to common law and the provisions CT Page 347 of Connecticut General Statutes 52-418. (Rev. 1958, Supp. 1992). The defendant has filed a cross application to confirm the arbitration award.
The facts of the case are not substantially in dispute. The basic issue in the case was the arbitrator's award approving the subcontracting of work performed by classified state employees to private contractors and the layoff of these employees during the same period of time.
Since 1979 the State of Connecticut, an employer under the State Employee Relation Act (SERA), has been party to various collective bargaining agreements with the plaintiff. The July 1, 1988 to June 30, 1991 contract covers the terms pertinent to this case. That contract establishes wages, hours, and working conditions for employees in the NP-2 Maintenance and Service bargaining unit throughout the State. The bargaining unit includes employees in the job title Quality Craft Worker ("QCW") (automotive and mechanical equipment). A number of these employees are employed within the Department of Public Safety, Division of State Police ("DPS"). It was the function of the DPS QCWs to perform preventative maintenance, including scheduled maintenance on police patrol vehicles and other equipment. Due to a claimed fiscal exigency and the Governor's demand to reduce positions for fiscal year 1991-1992, DPS laid off four maintenance personnel statewide and in close proximity of thereafter contracted the automotive maintenance and repair work to private garages. It should be noted that while the Employer has the right under the contract provision to layoff and also to separately contract out, both of these rights are limited and tempered by the Unit Collective Agreement and by State Statutes.
Section Ten of the Contract provides:
 "(a) Effective July 1, 1989, the State will not initiate contracting out of work normally performed by employees within the bargaining unit unless one or more of the following conditions is demonstrated: . . . . (4) Budgetary constraints preclude the use of bargaining unit employees to do the work.
(b) The State may continue to contract CT Page 348 out work, other than task labor, which has been contracted out historically, without regard to the restrictions stated in this Section."
 (d) During the life of the Agreement no full-time permanent employee will be laid off as a direct consequence of the exercise by the State employer of its right to contract out."
The issue that was formed for submission to arbitration was as follows: "Did the State of Connecticut (Department of Public Safety) violate Article 13, Secs. One and/or Ten of the NP-2 Contract by laying off Qualified Craft Workers (Automotive and Mechanical Equipment) on May 30, 1991. If so, what shall the remedy be consistent with the NP-2 Contract?"
In his opinion the arbitrator found that the State has the contractual right to layoff employees. The State also has the right to contract out certain work. Article 13, Sec. 10 of the Agreement sets forth the limitations on the State's right to layoff employees and to contract out work.
The arbitrator further found that the contracting out of work was not initiated by the DPS during the term of this Agreement. The contracting out was merely a continuation of the contracting out which the State had been doing for at least 12 years.
The arbitrator further found that the layoffs were not the direct consequence "of the State's right to contract out. The contracting out occurred after the layoffs.
Finally, the arbitrator found that the State of Connecticut (Department of Public Safety) did not violate Article 13, Section One and/or Ten of the NP-2 Contract by laying off Qualified Craft Workers (Automotive and Mechanical Equipment) on May 30, 1991.
It is the claim of the applicant that the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made as hereinafter set forth. (Conn. Gen. Stat. 52-418(2)(4)). CT Page 349
 a. The award fails to draw its essence from the Contract.
 b. The award effectively eliminates the provision and protection for employees on subcontracting found in Article 13, Section 10 and amounts to contractual substitution in violation of Article 16;
 c. The award violates public policy established by Chapter 67, State Personnel Act, and pertinent case law, as well as the public policy embodied in Article 13, Section Ten of the contract by:
 i. allowing expenditures of public funds for private contractor to replace work normally performed by full-time permanent classified employees; or,
 ii. allowing the layoff of full-time permanent classified employees and assignment of their work to private contractors.
The State, in its brief, replying to the claimed violations first reminds the court of the minimal judicial review of consensual awards. It is properly pointed out that judicial review of unrestricted submission (as is this case) is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission. O G/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3, 203 Conn. 133, 153-54. Citing also Bic Pen Corporation v. Local No. 134, supra 584; New Britain v. Conn. State Board of Mediation and Arbitration, 178 Conn. 557, 562; Board of Education v. Bridgeport Education Assn., 173 Conn. 287,291.
In the O G/O'Connell case cited above the court further stated: "We have stated frequently a point that bears reiteration; because consensual arbitration is a contractual remedy and the powers of the arbitrator are determined by the CT Page 350 parties themselves, judicial review of such arbitration is limited in scope." 203 Conn. 133, 154.
". . . A court is bound by the award of the arbitrator unless it falls within the proscription of 52-418 of the General Statutes, or procedurally violates the parties agreement." Costello Construction Corporation v. Teamsters Local 559, supra, 318 . . . ."Thus the trial court's review of an arbitral award is a far cry from a trial de novo." 203 Conn. 133,155.
The State claims and the court agrees that the burden is upon the applicant to convince the court that there has been a substantial violation of 52-418(4) upon which the application to vacate is based. In deciding whether an arbitrator has exceeded his power the court can only examine the submission and the award itself to determine whether the award conforms to the submission. It is the opinion of the court that it does.
For the reasons above stated the applicant's request to vacate the award is denied and the State's request to confirm the award is granted.
HARRY N. JACKAWAY JUDGE, SUPERIOR COURT